GORMLEY & JEFFERY TIRE CO. v. PENNSYLVANIA RUBBER CO.

(Circuit Court, W. D. Pennsylvania. September 9, 1907.)

No. 5, May Term, 1905.

PATENTS—INFRINGEMENT—WHEEL TIRES.

The Jeffery patents, Nos. 454,115, 466,565, 558,956, and 523,314, each for a wheel tire, and covering improvements in pneumatic tires, construed, and *held* not infringed.

In Equity. On final hearing.

Ernest Hopkinson (Livingston Gifford, of counsel), for complainant. Christy & Christy (George H. Christy and J. C. Sturgeon, of counsel), for respondent.

BUFFINGTON, Circuit Judge. This is a bill in equity, brought by the Gormley & Jeffery Tire Company against the Pennsylvania Rubber Company, charging infringement by it, in the manufacture of pneumatic rubber tires for automobiles, of four patents granted to Thomas B. Jeffery and now owned by complainant. The first patent is No. 454,115, issued July 16, 1891, for a wheel tire, claims 1, 2, 3, 4, 5, and 6 of which are alleged to be infringed. The respondent contends the patent is invalid and denies infringement. All the patents here involved antedated the automobile art and contemplated use on bicycles. In pneumatic wheels for vehicles there is an inner inflatable elastic tube. This in turn is protected against external injury and internal overinflation by a flexible outer sheath. The patents all concern the engagement of such external sheath to the tire of the vehicle. This particular one recognized the prior conjoint use of these two devices as follows:

"This invention is designed to provide improved means for protecting a rubber wheel tire, and is particularly designed and adapted for an inflation-tire; that is to say, a tire having a core composed of an elastically-expansible tube, which is inflated by air or gas and distended thereby to some extent, the air or gas being under such tension that but for a restraining or inclosing sheath such core would be liable to burst."

As the patentee does not specifically aver what his "improved means" or particular invention was, we turn to the description of his device for light in that regard. Now a study of such description and the claims based thereon satisfies us that the improvement which Jeffery disclosed was a double or intermeshing hook connection of sheath and tire edges. Thus he says, "The rim, A, is provided with hooked edges, a', a'," and the figure referred to shows hooks on the rim, doubled back, U-shaped, on the tire, so as to form recesses and permit engagement in such recesses of corresponding hook point on the hooks of the sheath. For these provision is made: "The tire-sheath, C, is provided with correspondingly hooked edges, C', C'." In the specification alone the word "hook," or "hooked," is found some 17 times, and other than double-hooked connection no other method is stated or suggested. If the patentee or his device contemplated the use of any other means or form of engagement, he did not disclose it to the public. The only variation suggested was the minor detail of making the hooks bend in or out. "On some accounts," says the patentee, "the hooks on

the rim are preferably turned outward, chiefly because the center of the body or inflatable core, B, is thereby rendered free from the irregularity which the hooks form when they are turned inward. On the other hand, the liability of the sheath-hooks to be pulled out from the rim-hooks by the expansive tendency of the core when inflated is somewhat less when the hooks are turned inward; but practically the two methods are about equally desirable. In either case it should be observed that the hook is open toward the axis, and it is preferably approximately in the direction of a tangent to the inflatable core, so that the expansible tendency of the core will tend to draw the hooks into close engagement." This combination of sheath and tire in the various modifications of this double-hook engagement constitutes the claims in question and the hooks on both, in some form, are elements of every claim, of which the first, for brevity's sake, will serve to illustrate, viz.:

"In combination with the rim having recesses open toward the axis of the wheel, the tire sheath having its edges reversed and engaged in such recesses, and the elastic expansible core between the rim and sheath, substantially as set forth."

Now, in the light of this specification, we are clear the respondent's tire does not infringe. The respondent uses other means to hold its tire in place, and its method is not disclosed or suggested in the patent in suit. If the disclosure of that patent comprised all the instruction the tire maker of to-day possessed, it is evident the art would not teach the method followed by both respondent and complainant in the manufacture of a modern automobile tire. The patentee showed a hook pure and simple. His hook was such that the hooked edges of the rim "may be turned inward or outward." His are genuine hooks, so shaped that, by virtue of the form and use of their recesses, increase of disruptive force, whether the hook or the rim is bent outward or inward, lessens the possibility of detachment of the interlocked edges. On the other hand, if the edge of respondent's rim is turned outward, no pneumatic connection can be made with a sheath, showing that the connections used in the two methods are essentially different. Respondent's device has no hook open towards the axis, nor one in the direction of a tangent to the inflatable core. While air pressure increases the adhesion of its engaging surfaces, yet its method of doing it is not the process of increasing engagement by the catch ends of the patentee's hooks mutually interlocked in holding recesses. In our judgment it would be a miscarriage of the patent system to so construe this Jeffrey patent with its specific form of hook connection as to make it cover respondent's device, which is so different from the hook of the patent that even the complainant who owns that patent uses the same method, and not the hooked engagement of the patent. Indeed, to so construe it would be to retard, not to stimulate, inventive advance.

The second patent is No. 558,956, issued April 28, 1896, for a wheel tire, claims 5 and 10 of which are alleged to be infringed. Respondent defends on the ground of noninfringement. We are of opinion the defense is sustained. The subject-matter of this patent, its late date in the art, and the close differentiations required to obtain the narrowly

limited claims in question, indicate the patent was restricted to a comparatively narrow field of improvement. The specification states:

"This invention relates to tires having inflatable cores; and it consists in the character and construction of the inclosing sheath and the mode of securing the same to the rim."

The character and construction of the proposed sheath are specifically shown. No novelty was suggested in the rim. Its construction for the broader type of the device is:

"The rim is a hollow rim made in a familiar manner from tubing, * * * having the outer side transversely concave to form a seat for the tire."

A special form is suggested:

"For the purpose of adapting it to receive my improved tire, the rim is preferably formed with the peripheral channels, a', a', in the outer or concave wall; but these are not essential to my invention, considered in its broadest phase. Their use, when present, will appear from the further description."

The lateral portions of the sheath the patentee made of folded canvas or other web, joined at the folded edges to thread or rubber of sufficient thickness to stand wear and "sufficient elastic flexibility to adapt it to yield with the core, and having also tensile elasticity, so that the sheath which comprises it as the middle section is transversely extensible to a slight degree." The purpose of this extensibility was to adapt the sheath for use with either an inflatable or a a nonextensible core. At the outer end of the folded canvas hooks or buttons were placed, and in the rim at corresponding distances were put engaging eyelet holes or button; "said eyelet-holes or buttonholes being formed in the channels, a', when the rim is made with such channels." When the core is inflated, "its tension being exerted in all directions tends to draw the hooks securely into the respective holes in the rim and effectually prevents dislodgment." Of this button connection, which the patentee evidently regarded as the substantial feature, "in the character and construction of the inclosing sheath and the mode of securing the same to the rim," he says:

"The use of the buttons or hooks, in lieu of any continuous fastening, affords the advantage of detachability for short distances without detaching the entire edge or even any large section of the edge, and, as compared with familiar devices, such as continuous lacing, it affords a similar advantage that the fastening need not even be relaxed or slackened anywhere except at a point where it is desired to completely detach in order to get full access to the core."

To make the fastening still more secure, the patentee suggested an additional element, which, it will be noted, forms an element in the claims here in controversy. It is thus described:

"It is not a necessity that the lateral pieces, O"—that is, the canvas or web sides—terminate at their lines of reinforcement or attachment to the rim, and, on the contrary, one or both of them might be extended farther under the inflatable core, so as to rest between said core and the rim and form a lining for the seat of the core in the rim; and such extension adapts the sheath to be held more firmly in its place by the inflation of the core, and such inflation, holding the inwardly-extended edges of the sheath firmly seated between the core and the rim, keeps the beads formed by the cord, c"—an alternative construction of a strengthening cord placed in the folded edges of the web—in the

grooves or channels, a', of the rim, and makes them assist materially in holding the sheath from spreading when the core is inflated."

The limited side type is described in claim 2, which reads as follows:

"The rim and an inflatable core, combined with an envelop or sheath for the core, parted under the core and fastened to the rim at two peripheral lines, one on each side of the plane or parting, and detachable from the rim at one of the said lines of fastening, said sheath having its lateral portions flexible, but not laterally extensible, and its middle portion, including the thread, elastically extensible, substantially as set forth."

And the extended side in claim 5, which is for:

"The rim and an inflatable core combined with an envelop comprising a tread of cushioning substance and lateral portions composed of textile fabric which are joined to the rim at two peripheral lines, and extend inwardly from said lines underneath the core between the same and the rim in the plane of the pressure radial with respect to the wheel, which is experienced by the tread and exerted by the inflation of the core, whereby the tension of the air in the core due to inflation and to the pressure of the load operates on said inwardly-extending fabric portions of the sheath to hold them seated in the rim, substantially as set forth."

And in claim 10, which is for:

"In combination with the rim having peripheral grooves in the tire-seat, the inflatable core and envelop for the same rifted at the inner side to admit the core and permit its removal, and comprising a tread of cushioning substance, and lateral portions which are provided respectively with beads adapted to engage the grooves of the rim, and extending inward from said beads to the rift, whereby the inflation of the core presses such inwardly-extending marginal portions of the sheath against the rim between the planes of the beads, substantially as set forth."

In the respondent's device, however, the sheath ends with its two peripheral side connections with the rim. No theory or ingenious contention can change that fact; and fact, not theory, is the test of infringement. Accordingly we hold respondent does not infringe.

The third patent is No. 466,565, issued January 5, 1892, for a wheel tire, claim 7 of which is alleged to be infringed. The defense is noninfringement. We think the defense is sustained. The patent requires no detailed discussion. It is a device for fastening a tire sheath to a rim by means of hooks, five different modifications of which are shown in the drawings. The element of the seventh claim, "the endless seamless tire-sheath of rubber or like cushioning substance circumferentially rifted at the inner side and joined to both edges of the rim, * * * substantially as set forth," is the hook connection of the specification. The respondent, using no hooks to make its connection, does not infringe.

The fourth patent is No. 523,314, issued July 17, 1894, for a wheel tire, of which claims 1, 2, and 3 are alleged to be infringed. The defense is noninfringement. As pertinent to the present case the patent was for a tire provided with an auxiliary wedging device. This consists of a circular ribbed ring, preferably of soft rubber, cemented to the inner periphery of the tube. "The use of the ring, D, as a base for the core, is a convenient means for rendering the compression or 'fullness' of the core uniform throughout its circumference; said core and ring being secured together and cemented before they are

put into the sheath, and the 'fullness' being in that manner easily distributed equally." The function of these parts is described as follows:

"If the tire cavity is directly inflated, the air pressure produced therein will tend to seat the ring, D, in the rift of the tire, and force its rib, D', there-into, * * * and when the tire is collapsed, so that it may be readily squeezed together, such manipulation will withdraw the ring and its rib, D', from the rift, and permit the tire to be disengaged readily from the ring."

This ring, it will be noted, is an element of each of the claims in question. Now the respondent has neither ring nor rib on its core, but is alleged to infringe by the use of small butterfly bolts placed at four quadrant points on the rim. Such bolt consists of a piece of stiff metal about two inches long, with upbent sides. It is clamped to the rim by a rigidly fixed bolt and nut, with a set screw, and serves to keep the sheath in place on the rim, should the core become deflated. The bolt is not affected by either tire inflation or deflation. It is thus clear that its function and structure are wholly diverse from the ringed rib of complainant's patent, and perform a wholly different function.

Holding, as we do, that no infringement of any of the patents is shown, this bill will be dismissed on presentation of a decree.