GORMLEY & JEFFERY TIRE CO. v. PENNSYLVANIA RUBBER CO.

(Circuit Court of Appeals, Third Circuit.   April 1, 1908.)

No. 69.

PATENTS—INFRINGEMENT—RUBBER TIRES.

The Jeffrey patents, Nos. 454,115 and 558,956, for improvements in rubber tires, both narrowly construed as required by the prior art, *held* not infringed.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

For opinion below, see 155 Fed. 982.

Livingston Gifford, for appellant.

George H. Christy and J. C. Sturgeon, for appellee.

Before GRAY, Circuit Judge, and CROSS and HOLLAND, District Judges.

HOLLAND, District Judge. This case comes here on an appeal from a decree of the Circuit Court of the Western District of Pennsylvania dismissing the bill. In the court below infringement was charged as to four patents. On this appeal two of the patents are dropped, and the two relied on were granted to Thomas B. Jeffery for inventions in vehicle tires. The infringement is charged as to claims 1, 2, 3, 4, 5, and 6 of letters patent No. 454,115, issued June 16, 1891, on application filed March 26, 1891, and claims 5 and 10 of letters patent No. 558,956, issued April 28, 1896, on application filed April 3, 1891. In the opinion of the Circuit Court, reported in 155 Fed. 982, it was held that infringement was not proven, for which reason the

bill was dismissed. Rubber tires have been used on vehicles for a number of years, particularly upon bicycles, and at first were solid and attached to the rim of the wheel by various devices. Improvements in the art followed rapidly, both as to the construction of the tire and the mode of adjustment, so that by the time they had advanced from bicycles to automobiles the art had progressed from the solid to the cushion, and thence to the pneumatic form. Patents were issued for each of these improvements, both as to the construction of the tire and the mode of attachment.

First. The oldest and most obvious form was the solid tire consisting of mere hoops or bands of rubber, with some means of attachment, such as screws or bolts. Then was introduced the tube extending through the inside of the rubber tire so as to give it more elasticity, and was called a "cushion" tire. In still others this tube was filled with compressed air to still further increase the elasticity, and these were called "pneumatic" tires. They were attached to the rim of the wheel by bolts, diverging flanges or ears, wire bindings, and sometimes by cement. But however attached, and whether the tire itself was solid or cushion or pneumatic, it invariably, in this stage of the art, was completely formed and self-sustaining both before attachment to and after detachment from the wheel; and in every case the means of attachment, whether bolts, ears, wires, or cement, was a mere addition to the complete tire, performing no function in resisting any strain from within the tire. Up to this time they contained no sheath, but every advance was patented, both as to construction and mode of attachment. Next was developed the tire containing a sheath, which is not made up until attached to the wheel, and in which the wheel rim and sheath together form a girdle to restrain the tube from bursting. The Dunlop was the progenitor of this class, and was patented in England March 8, 1889, and in the United States (No. 435,995) on September 9, 1890, upon an application filed March 11, 1890. It is referred to in the first patent in suit, to wit, No. 454,115, descriptively as "a tire having a core composed of elastically expansible tube, which is inflated by air or gas and distended thereby to some extent, the air or gas being under such tension that but for a restraining or enclosing sheath such core would be liable to burst." The claim in Dunlop's patent is as follows:

"In hollow air-inflated wheel-tires for cycles and other vehicles, the combination, with an inner expansible tube and outer protective covering of strengthening folds or layers of cloth, canvas, or linen, and protective strips of caoutchouc interposed between the edges of the rim and strengthening fold or layer, substantially as and for the purposes herein set forth."

Beside this, there is one other patent of importance in considering the state of the art in connection with the questions at issue. This patent was issued in England to Golding on December 8, 1890, and in the United States (No. 493,160) on March 7, 1893, on an application which had been filed October 6, 1891. It was for an improvement in rubber tires and rims for velocipedes, and other light carriages. We find from the specifications that:

"The edges of the rim are bent round and brought a short distance toward each other and nearly parallel to the flat surface of the rim, thus forming an

inner recess or groove along the rim on both sides, suitable for holding the projecting flanges of the tire."

The tire contained a corresponding lateral flange, which was inserted into this recess and secured by the pressure of the compressed air when the tire was inflated.

Claim 1 is as follows:

"The combination with a metallic wheel rim having lateral recesses formed by reflexing the edges, of an inflatable tire having corresponding lateral flanges which are detachably inserted into such recesses, and are secured therein by the pressure of the contained compressed air when the tire is inflated substantially as hereinbefore set forth."

Claim 3 shows that Golding used a sheath and an inner inflatable tube. This patent was purchased by the appellant soon after it was issued, and owned by it down to the time it expired.

The first Jeffrey patent in suit, No. 454,115, is for an improvement in wheel tires, and "is designed to provide improved means for protecting a rubber wheel tire, and is particularly designed and adopted for an inflation tire; that is to say, a tire having a core composed of an elastically expansible tube, which is inflated by air or gas and distended thereby to some extent, the air or gas being under such tension that but for a restraining or inclosing sheath such core would be liable to burst." The inflated core or elastically expansible tube, encased in a restraining sheath, of the Dunlop patent, is the same in the Jeffrey patent. The improvement of the latter, among other things, over the Dunlop, extends to the device for attaching the tire to the rim of the wheel. This, in the description, we find is a "rim" provided with hooked edges. "The hooks may be turned either inward or outward. * * * The tire-sheath is provided with correspondingly hooked edges. * * * Ordinarily the entire sheath will be made of canvas or similar woven fabric comparatively inelastic, and, in that event, the hooked edges will be stiffened with caoutchouc or india rubber, or they may be vulcanized if the sheath is made of suitable substance to endure the temperature. * * * On some accounts the hooks on the rim are preferably turned outward, chiefly because the center of the body or inflatable core is thereby rendered free from the irregularity which the hooks form when they are turned inward. On the other hand, the liability of the sheath hooks to be pulled out from the rim hooks by the expansive tendency of the core when inflated is somewhat less when the hooks are turned inward; but practically the two methods are about equally desirable." In either case it should be observed that the hook is open toward the axis, and it is preferably approximately in the direction of a tangent to the inflatable core, so that the expansible tendency of the core will tend to draw the hooks into close engagement.

This improvement in the attachable device, which the patentee has designated "hooked edges," both on the rim and on the tire, is variously stated in claims 1, 2, 3, 4, 5, and 6, which claims the defendant is charged with infringing. They are as follows:

"1. In combination with the rim having recesses open toward the axis of the wheel, the tire-sheath having its edges reversed and engaged in such re-

cesses, and the elastic expansible core between the rim and sheath, substantially as set forth.

"2. In combination with the rim having hooked lateral edges, the tire-sheath transversely flexible and having hooked edges which detachably engage the hooked edges of the rim, substantially as set forth.

"3. In combination with the flexible tire-sheath having rigid hooked edges, the rim having hooked edges to engage those of the sheath, substantially as set forth.

"4. In combination with an inflatable core, the rim in which such core is seated, having its edges reversed to form hooked flanges approximately tangential to the core, and the flexible sheath for such core, having its edges engaged in such hooked flanges, substantially as set forth.

"5. In combination with the rim having hooked lateral edges, the flexible sheath and rigid strips about which the lateral edges of the sheath are wrapped inserted with the enwrapping-sheath edges within the hooks at the edges of the rim, substantially as set forth.

"6. In combination with the rim having hooked lateral edges, the flexible sheath and rigid strips about which the lateral edges of the sheath are wrapped, such strips being folded with the enwrapping sheath to form rigid hooks at the edges of such sheath, such hooks being engaged with the hooks at the edges of the rim, substantially as set forth."

It will be seen that the attachable device in this patent is the "hooked connection" of the sheath and tire edges. The patentee says "the rim is provided with hooked edges," and, as said by the court below, these hooks on the rim are "doubled back U-shaped, so as to form recesses and permit engagement in such recesses of corresponding hook points on the hooks of the sheath." This hook is open toward the axis, and is "preferably approximately in the direction of a tangent to the inflatable core so that the expansible tendency of the core will tend to draw the hooks into close engagement." The complainant never manufactured tires with the attachable device described in its patent No. 454,115. It was found to be, to say the least, an objectionable means of attachment, and no tires were manufactured as therein described; but the complainant modified its form of attachment by changing the device from a hook, with its opening toward the axis, to a projection of the rim more nearly parallel to the flat surface of the rim, and changed the angle of the hook on the tire more nearly to that of a flange to correspond with the tire. This is the form of the appellee's device, and, if the hook-shaped attachment described and claimed in appellant's patent No. 454,115 includes the form appellant has used down to the present time, then the appellee has infringed, because the latter is using the same kind of attachable device used by appellant, but the appellee claims both are using the device described in the Golding patent, which has expired and was public property before appellee began to use it. When Jeffrey patented his hooked device set forth in No. 454,115, the field had been well covered, and, if he had made his claim sufficiently broad to include "an extension of a rim partly or nearly parallel with the flat portion of the wheel with the flange on the tire to correspond, such as both parties here are using, he would have invaded the domain pre-empted by the Golding patent, of which the "edges of the rims are bent round and brought a short distance toward each other and nearly parallel to the flat surface of the rim, thus forming an inner recess * * * for holding the projecting flanges of the tire. * * * The tire is

made to fit the rim rather tight * * * and the flanges spring into the recesses." So that the Jeffrey patent can only be sustained by a construction restricting it within the narrow limits of the hooked device which "opens toward the axis," and cannot be extended to a flange "nearly parallel to the flat surface of the rim," and, so construed, it is not infringed. It will, therefore, be unnecessary to consider the question of the patentability of Jeffrey's improvement.

The conclusion of the court below that the second patent No. 558,956 was not infringed we also think is correct, and we cannot do better than to quote the language there used:

"The second patent is No. 558,956, issued April 28, 1896, for a wheel tire, claims 5 and 10 of which are alleged to be infringed. Respondent defends on the ground of noninfringement. We are of the opinion the defense is sustained. The subject-matter of this patent, its late date in the art, and the close differentiations required to obtain the narrowly limited claims in question indicate the patent was restricted to a comparatively narrow field of improvement. The specification states: 'This invention relates to tires having inflatable cores; and it consists in the character and construction of the inclosing sheath and the mode of securing the same to the rim.' The character and construction of the proposed sheath are specifically shown. No novelty was suggested in the rim. Its construction for the broader type of the device is: 'The rim is a hollow rim made in a familiar manner from tubing * * * having the outer side transversely concave to form a seat for the tire.' A special form is suggested: 'For the purpose of adapting it to receive my improved tire the rim is preferably formed with the peripheral channels, A–1, A–1, in the outer or concave wall; but these are not essential to my invention considered in its broadest phase. Their use, when present, will appear from the further description.' The lateral portions of the sheath the patentee made of folded canvas or other web, joined at the folded edges to thread or rubber of sufficient thickness to stand wear and 'sufficient elastic flexibility to adapt it to yield with the core, and having also tensile elasticity. So that the sheath which comprises it as the middle section is transversely extensible to a slight degree.' The purpose of this extensibility was to adapt the sheath for use with either an inflatable or a nonextensible core. At the outer end of the folded canvas, hooks or buttons were placed and in the rim at corresponding distances were put engaging eyelet holes or buttons; 'said eyelet-holes or button-holes being formed in the channels, A–1, when the rim is made with such channels.' When the core is inflated, 'its tension being exerted in all directions tend to draw the hooks securely into the respective holes in the rim and effectually prevent dislodgment.' Of this button connection, which the patentee evidently regarded as the substantial feature, 'in the character and construction of the inclosing sheath and the mode of securing the same to the rim,' he says: 'The use of the buttons or hooks, in lieu of any continuous fastenings, affords the advantage of detachability for short distances without detaching the entire edge or even any large section of the edge, and as compared with familiar devices, such as continuous lacing, it affords a similar advantage that the fastening need not even be relaxed or slackened anywhere except at a point where it is desired to completely detach in order to get full access to the core.' To make the fastening still more secure the patentee suggested an additional element, which it will be noted forms an element in the claims here in controversy. It is thus described: 'It is not a necessity that the lateral pieces, C'—that is, the canvas or web sides—'terminate at their lines of reinforcement or attachment to the rim, and, on the contrary, one or both of them might be extended farther under the inflatable core, so as to rest between said core and the rim and form a lining for the seat of the core in the rim; and such extension adapts the sheath to be held more firmly in its place by the inflation of the core, and such inflation, holding the inwardly extended edge of the sheath firmly seated between the core and the rim, keeps the beads formed by the cord, c'—an alternative construction of strengthening cord placed in the folded edges of the web—'in the grooves or channels, A–1, of the

rim and makes them assist materially in holding the sheath from spreading when the core is inflated.'

"The limited side type is described in claim 2, which reads as 'follows: 'The rim and an inflatable core combined with an envelop or sheath for the core parted under the core and fastened to the rim at two peripheral lines, one on each side of the plane of parting, and detachable from the rim at one of the said lines of fastening; said sheath having its lateral portions flexible, but not laterally extensible, and its middle portion, including the thread, elastically extensible; substantially as set forth.' And the extended side in claim 5, which is for: 'The rim and an inflatable core combined with an envelop comprising a thread of cushioning substance and lateral portions composed of textile fabric which are joined to the rim at two peripheral lines, and extend inwardly from said lines underneath the core between the same and the rim in the plane of the pressure radial with respect to the wheel, which is experienced by the thread and exerted by the inflation of the core; whereby the tension of the air in the core due to inflation and to the pressure of the load operates on said inwardly-extending fabric portions of the sheath to hold them seated in the rim: substantially as set forth.' And in claim 10, which is for 'in combination with the rim having peripheral grooves, in the tire seat, the inflatable core and envelop for the same rifted at the inner side to admit the core to permit its removal, and comprising a thread of cushioning substance, and lateral portions which are provided respectively with beads adapted to engage the grooves of the rim, and extending inward from said beads to the rift; whereby the inflation of the core presses such inwardly extending marginal portions of the sheath against the rim between the planes of the beads; substantially as set forth.'

"In the respondent's device, however, the sheath ends with its two peripheral side connections with the rim. No theory or ingenuous contention can change that fact; and fact, not theory, is the test of infringement. Accordingly we hold respondent does not infringe."

The decree is affirmed, with costs.