## IN THE MATTER OF THE PETITION OF LUCY TOMSON FOR A WRIT OF HABEAS CORPUS. (ALSO IN THE MATTER OF ROSE WALTERS.)

### April 28, 1914.

1. *Citizenship of alien women by marriage with United States citizen:* An alien woman who might herself be naturalized on the ground of being a free white woman, becomes a citizen of the United States upon becoming the wife of a citizen, without regard to her moral character.

2. *Naturalization by marriage with citizen—Free white woman:* No other requirement than that she is a "free white" woman is necessary for her recognition as a citizen of the United States upon such marriage.

*Habeas Corpus:* Motion to discharge petitioners, deportable alien women, on ground of their marriage to citizens.

*Lorrin Andrews* for petitioners.

*J. W. Thompson,* Assistant U. S. Attorney, for respondent.

DOLE, J.   The circumstances in these two cases are similar, and a conclusion relating to the first will apply to the second.

The petitioner, an alien woman, was detained on the ground of having been found practicing prostitution, thereby being unlawfully in the country.  A warrant of deportation was issued to the commissioner of immigration at Ellis Island, N. Y., and the inspector in charge at Honolulu, T. H., respondent, was instructed by the acting commissioner general to forward her to the commissioner of immigration at the Angel Island Station, San Francisco, California.  A writ of habeas corpus was issued and a hearing came up on exceptions to the amended return of respondent.

One of the allegations of the petitioner is that she is an

American citizen, being married to an American citizen. The return contains the contention that, if petitioner has participated in a marriage ceremony with her alleged husband, the same was performed after said order of deportation was made and served, and that she was not then capable of becoming a citizen of the United States, having been adjudged of bad moral character and having admitted that she was engaged in the practice of prostitution, and that if the said marriage ceremony was performed it was done for the purpose of evading the law and was not a legal marriage. Argument was had upon this point, and upon other points at issue as well, and authorities cited.

[1] [2] The main point made for the respondent was that the provision of law admitting alien women married to American citizens to the status of citizenship when they themselves might be lawfully naturalized, is limited by the provisions excluding from naturalization and admission to the United States persons of immoral character and those who might be undesirable by reason of disease, mental deficiency, etc., as well as by the provision denying naturalization on grounds of race.

Section 1994 of the Revised Statutes, which is a restatement of the act of February 10, 1855, 10 Stat. 604, enacts as follows:

"Any woman who is now or may hereafter be married to a citizen of the United States, and who might herself be lawfully naturalized, shall be deemed a citizen."

The Revised Statutes were passed by Congress as of December 1, 1873.

The respondent contends that the expresssion, "who might herself be lawfully naturalized", refers to the requirements of the statutes of naturalization, prominent among which is the possession of good moral character, and as the admission of the petitioner is a denial of such quality and would preclude her from obtaining letters of citizenship under the provisions of the statute, she is precluded

from recognition as an American citizen through marriage to an American citizen.

The case of *Kelly v. Owen,* 7 Wall., 74 U. S. 498 (1868), in referring to the statute above quoted, says:

"As we construe this act, it confers the privileges of citizenship upon women married to citizens of the United States, if they are of the class of persons for whose naturalization the previous acts of Congress provide. . . . His citizenship, wherever it exists, confers, under the act, citizenship upon her. . . . Its object, in our opinion, was to allow her citizenship to follow that of her husband, without the necessity of any application for naturalization on her part; . . . The terms, 'who might lawfully be naturalized under the existing laws,' only limit the application of the law to free white women."

The case of *Hopkins v. Fanchant,* 130 Fed. 839, (Circuit Court of Appeals, Ninth Circuit, 1904). is in some ways similar to the case before the court, in that, pending proceedings for the deportation of the petitioner, and after the writ of habeas corpus was issued, she married a citizen of the United States. The court said:

"The rule is well settled that her marriage to a naturalized citizen of the United States entitled her to be discharged. . . . The status of the wife follows that of her husband. And by virtue of her marriage her husband's domicile became her domicile."

It does not appear in the report of the case upon what grounds she was found to be unlawfully in the United States.

Against these cases the respondent cites two decisions; one by a Circuit Court and the other by a District Court: *In re Rustigan,* 155 Fed. 982-983 (1908, Circuit Court), *Ex parte Kaprielian,* 188 Fed. 695 (1910, District Court).

The point made by the *Rustigan* case is that the decision in *Kelly v. Owen* was made in view of the disqualifications for naturalization of aliens under the then existing laws, which, as the decision states, "limit the application

of the law to free white women", generally to free white persons, and adds, "the immigration laws have since added to the classes of persons who are incapable in their own right of naturalization". The *Kaprielian* case, emphasizes this point as follows: "The present act regulating immigration, passed in 1907, . . . repeals all prior acts or parts of acts inconsistent with its provisions. After a final determination according to those provisions, that a woman belongs, and belonged at the time of her entry into the country, to a class of aliens forbidden by law to enter or to remain, it cannot be said that she is capable of being lawfully naturalized."

Now let us see what the requirements of naturalization were at the time the said cases of *Kelly v. Owen* and *Hopkins v. Fanchant* were decided. In April, 1802, a law was passed by Congress requiring good moral character as one of the conditions of naturalization of aliens. 2 Stat. 153-154. The statute containing this requirement was reenacted as a part of the Revised Statutes in the session of 1873 and 1874, p. 378. As to the restrictions on immigration, we find the following: On March 3, 1878, Congress passed an act excluding women imported for purposes of prostitution, and convicts (18 Stat., part 3, 477); on August 3, 1882, an act excluding persons likely to become public charges, convicts, lunatics and idiots (22 Stat. 214); on March 3, 1891, an act excluding polygamists, felons, those having contagious diseases, insane persons, idiots and those likely to become public charges (26 Stat. 1084); on March 3, 1893, an act with similar exclusion provisions as the last (27 Stat. 569); on March 3, 1903, an act excluding, among other classes of aliens, prostitutes and those importing prostitutes (32 Stat. 1214).

It appears from these citations that when the decision in *Kelly v. Owen,* supra, was made, the Supreme Court of the United States proceeded to say, referring to the act of 1855, supra, "it confers the privileges of citizenship upon

women married to citizens of the United States, if they are of the class of persons for whose naturalization the previous acts of Congress provide"; and proceeds to define such class in the following words: "The terms 'who might lawfully be naturalized under the existing laws', only limit the application of the law to free white women." And this in spite of the fact that good moral character, attachment to the principles of the Constitution of the United States, and some other conditions, are required by the previous acts of Congress. And when the decision in *Hopkins v. Fanchant,* supra, was rendered, the existing laws excluded from admission to the country many classes of persons regarded as undesirable, including prostitutes; and yet the Circuit Court of Appeals of the Ninth Circuit announced its view of the law as quoted above, and cites the case of *Kelly v. Owen,* among others, in support of it.

It thus appears that these two tribunals agree upon such a construction of the statute (Rev. Stat., sec. 1994) as limits its application to aliens being free white persons, following the original statute of naturalization, supra. The amendment of this statute, enlarging its application to Africans, does not concern this case, or those cited. This agreement involves necessarily the view that the descriptions of persons classed as undesirable from disease, morals, or pauperism, and therefore excluded, were not intended by Congress to be considered in the application of the words, "who might herself be lawfully naturalized."

In the case of *Low Wah Suey v. Backus,* 225 U. S. 460, 473, the court declined to interfere with the deportation of the Chinese wife of an American citizen, who had been found practicing prostitution, saying, "Being incapable of naturalization herself, although the wife of a Chinaman of American birth, she remained an alien and subject to the terms of the act." Also, "Under the present statute, when a woman who could be naturalized, marries a citizen of the United States, she becomes by that act a citizen

herself." The woman in that case was allowed to be deported presumably because, being an alien who was practicing prostitution in the United States, she was not a free white woman, or a woman of African descent, who was the wife of an American citizen.

The exceptions on this point relating to the claims of petitioner of the status of an American citizen, are allowed, and evidence will be heard on the question of such marriage.

The same ruling as to the case of Rose Walters.