# LOW WAH SUEY v. BACKUS, COMMISSIONER OF IMMIGRATION.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 869.　Argued April 30, 1912.—Decided June 7, 1912.

Congress may pass laws forbidding aliens or classes of aliens from coming within the United States and may provide for their expulsion; it may also devolve upon the executive department or subordinate officers the right and duty of carrying out the law. *Wong Wing* v. *United States,* 163 U. S. 228.

Hearing on proceedings for deporting aliens before executive officers may be made conclusive when fairly conducted. One attacking such proceedings in the courts must show that the officers conducting them were manifestly unfair and abused the discretion committed to them. Otherwise the order of executive officers within the authority of the statute is final.

When a case is decided upon demurrer the question is whether a case was made upon those allegations which are well pleaded and not upon those that are mere conclusions of law.

A preliminary examination of an alien without counsel is permitted by the statute; and if at subsequent stages of the proceedings the alien has counsel there is no denial of right.

The Alien Immigration Acts of 1907 and 1910 do not give authority to the Commissioner or Secretary to issue process to compel attendance of witnesses on behalf of the alien held for deportation. The alien is not denied rights if the witnesses produced on his behalf are heard.

The Act of 1907 is not unconstitutional as denying one held for deportation of his liberty without due process of law because it does not give the immigration officers power to compel his witnesses to appear.

This court cannot pass on an objection that hearsay evidence was received and not communicated to the alien where the record does not disclose the nature of the testimony.

This court is not prepared to declare the rules of the Secretary of Commerce and Labor in regard to proceedings for deportation of aliens to be so arbitrary as to deprive the alien of a fair hearing and

beyond the power of the Secretary to make under the authority given by the statute. The statute expressly provides for a summary hearing.

As a general rule in *habeas corpus* proceedings, a copy of the record of the proceedings attacked is required, *Craemer* v. *Washington*, 168 U. S. 124, and if petitioner cannot comply with the rule by annexing a complete copy he should comply with it so far as it is within his power.

The Alien Immigration Act in terms applies to all aliens.

An alien is one born out of the jurisdiction of the United States and who has not been naturalized under its Constitution and laws.

The effect of the marriage of an alien woman to a male citizen of the United States is not determined by the common law. That matter is regulated by statute.

Under § 1994, Rev. Stat., a woman who could be naturalized becomes by her marriage to a citizen of the United States a citizen herself. See *Kelly* v. *Owen*, 7 Wall. 496.

*Quære*, whether a woman, incapable under the laws of the United States of being naturalized, can become a citizen of the United States by marriage to a citizen thereof.

An alien who has become a citizen of one of the States, can be excluded under the Alien Immigration Act if within a class prohibited to enter.

All statutes must be given a reasonable construction, with a view of effecting the object and purposes thereof.

The object of the provisions of the Alien Immigration Acts of 1907 and 1910, providing for deportation of prostitutes, was to prevent the introduction and keeping in this country of women of the prohibited class; and even if a woman married to a citizen might be permitted to enter if she does not belong to that class, if she is found violating the statute by being in a house of prostitution she becomes subject to the deportation provisions thereof, notwithstanding her marriage to a citizen.

Where Congress has power to pass an act and its provisions are plain, the court must apply it even in a hard case.

If a statute should be amended to prevent its operation in particular cases that result can only be accomplished by an exercise of legislative authority.

THE facts, which involve the construction of the Alien Immigration Act of February 20, 1907, and the right thereunder of the Government to deport the alien Chinese wife

of a Chinese citizen found within three years after enter-
ing this country in a house of prostitution, are stated in
the opinion.

*Mr. Corry M. Stadden,* with whom *Mr. George A. Mc-
Gowan* was on the brief, for appellants:

This court has jurisdiction. In *Yeung How* v. *North,*
223 U. S. 705, dismissed *per curiam* this term, there had
been a trial on the main issues, and petitioner was a
widow. The cases are dissimilar. The statute should
receive a reasonable construction. *United States* v. *Kirby,*
7 Wall. 482.

In this case there is a husband and a child of the mar-
riage. Even if the marriage left appellant an alien she
was not an alien within the meaning of the Alien Immi-
gration Acts. *Gonzales* v. *Williams,* 192 U. S. 1. *Re
Thakla Nicola,* 184 Fed. Rep. 322.

As to the status of the Chinese wife of an American-
born citizen, see *Tsoi Sim* v. *United States,* 113 Fed. Rep.
925.

The fact that appellant could not be naturalized does
not prevent her from becoming a citizen by marrying a
citizen. See T. D. Jan.–Dec., 1900, No. 22551, construing
§ 1994, Rev. Stat.

Naturalization is the only right withheld. Marriage and
its legitimate effects are not affected.

Appellant's constitutional rights were invaded by the
proceeding. *United States* v. *Williams,* 185 Fed. Rep.
598; *Redfern* v. *Halpert,* 186 Fed. Rep. 150.

The petition states why the record is not annexed
thereto. It was too voluminous in the first place and it
was inaccessible to the petitioner. The time was brief as
the order was to deport forthwith. See *Chin Yow* v.
*United States,* 208 U. S. 8.

As to what is abuse of discretion and arbitrary action
on the part of the inspector and the Secretary, see *United*

*States* v. *Chin Len,* 187 Fed. Rep. 544; *Lewis* v. *Frick,* 189 Fed. Rep. 146; *Ex parte Lee Kow,* 161 Fed. Rep. 592; *Ex parte Korner,* 176 Fed. Rep. 478; *Woey Ho* v. *United States,* 109 Fed. Rep. 888.

An abuse of discretion is merely a discretion exercised to an end or purpose not justified by and clearly against reason or evidence. *Sharon* v. *Sharon,* 75 California, 48; 1 Cyc. 219; 14 Cyc. 383; *Rothrock* v. *Carr,* 55 Indiana, 334.

*Mr. Assistant Attorney General Harr,* with whom *The Solicitor General* was on the brief, for appellee:

It does not affirmatively appear from the petition that appellant was denied a fair hearing by the immigration authorities, which is the foundation of the jurisdiction of the District Court. *United States* v. *Ju Toy,* 198 U. S. 253; *Chin Yow* v. *United States,* 208 U. S. 8; *Tang Tun* v. *Edsell,* 223 U. S. 673.

Under the principles announced by this court in respect to administrative hearings, an alien has no right to be represented by counsel through all stages of the proceedings leading to his deportation. *In re Can Pon,* 168 Fed. Rep. 479, 483.

The regulations of the Secretary of Commerce and Labor for the enforcement of the Immigration Act give the alien full opportunity to show cause and to be represented by counsel from a certain point in the proceedings. It is not alleged that these regulations were not complied with.

The fact that the alien was an unwilling witness does not indicate any abuse of authority, nor the fact that her answers were incorporated into the record.

The immigration officers had no power to compel the attendance of witnesses.

That certain alleged hearsay evidence was considered by the immigration officers is immaterial, administrative

proceedings not being subject to the limitations of a judicial trial; besides, the nature of such evidence is not set forth or the truth thereof denied.

The allegation that the hearings before the Secretary were not in fact hearings upon the merits is a mere conclusion of law, no facts being set forth in support of the contention.

The petition is defective in that it is not accompanied by copies of the proceedings before the immigration authorities which are attacked, or the essential parts thereof. *Craemer* v. *Washington*, 168 U. S. 124, 129; *Terlinden* v. *Ames*, 184 U. S. 270, 279; *Haw Moy* v. *North*, 183 Fed. Rep. 89.

The allegations in this case are fundamentally different from those in the *Chin Yow Case*, 208 U. S. 8, 11. There is no allegation here of any denial of opportunity to produce testimony or to secure the attendance of witnesses.

Under the laws of the United States, a Chinese woman does not become a citizen of the United States by virtue of her marriage to a citizen. Section 1994, Rev. Stat., only confers citizenship upon a woman married to a citizen of the United States "who might herself be lawfully naturalized." These words here and in the act of February 10, 1855, 10 Stat. 604, from which it was taken, refer to the class or race who might be lawfully naturalized. *Kelly* v. *Owen*, 7 Wall. 496; *Burton* v. *Burton*, 1 Keyes (N. Y.) 359; *Leonard* v. *Grant*, 5 Fed. Rep. 11; *Kane* v. *McCarthy*, 63 No. Car. 299; *United States* v. *Kellar*, 13 Fed. Rep. 82.

A native of China is not a "white person" within the meaning of the term as used in the naturalization laws, *In re Ah Yup*, 5 Sawy. 155, and such statutes have never been made applicable to persons of the Chinese race. *Fong Yue Ting* v. *United States*, 149 U. S. 698, 716.

Marriage to a citizen does not prevent the deportation of an alien woman for a violation of the immigration laws. *Yeung How* v. *North*, 223 U. S. 705. See, also, *Hoo Choy*

v. *North,* 183 Fed. Rep. 92, in which certiorari was denied by this court.

It is of no consequence that the American-born husband of Yeung How had died before she was ordered deported. If she had become a citizen by virtue of the marriage, that citizenship status would have continued after the death of her husband. *Kelly* v. *Owen,* 7 Wall. 496; 15 Op. A. G. 599.

The alien wife of a citizen who becomes an inmate of a house of prostitution is within both the letter and the spirit of the immigration laws. *Gonzales* v. *Williams,* 192 U. S. 1, has no application, because in that case the allegiance of natives of Porto Rico had been transferred to the United States.

The marriage of Li A. Sim to Low Wah Suey did not change her political status with respect to this country. *Shanks* v. *Dupont,* 3 Pet. * 242, * 246, and cases cited; *White* v. *White,* 2 Met. (Ky.) 185, 191; *Sutliff* v. *Forgey,* 1 Cowen, 85; 5 Cowen, 713; *Mick* v. *Mick,* 10 Wend. 379; *Connolly* v. *Smith,* 21 Wend. 59.

If Li A. Sim had conducted herself properly, she would not, although an alien, have come within the operation of the immigration laws. Assuming that a citizen has the right to bring in a wife, although she be an alien, this does not authorize her to engage in immoral practices in violation of the restrictions placed by Congress upon all aliens.

It cannot be contended that the Immigration Act does not apply to the resident alien wife of a citizen because domiciled aliens have a quasi-citizenship according to certain authorities on international law (dissenting opinion in *Fong Yue Ting* v. *United States,* 149 U. S. 735), as this would exclude from its operation all domiciled aliens, and § 3 of the act is expressly directed at alien women or girls who become inmates of houses of prostitution after their entry into the United States. The only other ground of exemption is that the statute was not intended to disturb

the family relations; but this contention was overruled in *Zartarian* v. *Billings*, 204 U. S. 170, where the child of a naturalized citizen afflicted with trachoma was held not entitled to admission.

*In re Nicola*, 184 Fed. Rep. 322, has no application, because the women referred to therein belonged to a race that might be lawfully naturalized.

*United States* v. *Mrs. Gue Lim*, 176 U. S. 459, and *Tsoi Sim* v. *United States*, 116 Fed. Rep. 920, are also to be distinguished. The purpose of the Immigration Act in excluding alien prostitutes is to protect the public health and morals, and an alien woman who engages in such practices is as much within the purpose of the act when she is the wife of a citizen as when she is not.

MR. JUSTICE DAY delivered the opinion of the court.

Li A. Sim, a Chinese woman, wife of Low Wah Suey, was ordered to be deported by the Department of Commerce and Labor, a hearing having been had before an immigration inspector at San Francisco and appeal taken to the Secretary of Commerce and Labor under the provisions of the act of Congress approved February 20, 1907 (34 Stat. 898, c. 1134), the warrant for deportation reciting that she had landed at the port of San Francisco, California, on the fifteenth of April, 1910, and had been found in the United States in violation of the act of February 20, 1907, as amended by the act approved March 26, 1910 (36 Stat. 263, c. 128), namely, that she was an alien, found as an inmate of a house of prostitution within three years subsequent to her entry into the United States.

The statutes of the United States under which the proceedings were had and the warrant issued are principally § 3 of the act of March 26, 1910, amending § 3 of the act of February 20, 1907, and §§ 20 and 21 of the latter act. Section 3 provides: ". . . Any alien who shall be found

an inmate of or connected with the management of a house of prostitution or practicing prostitution after such alien shall have entered the United States, or who shall receive, share in, or derive benefit from any part of the earnings of any prostitute; or who is employed by, in, or in connection with any house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes, or where prostitutes gather, or who in any way assists, protects, or promises to protect from arrest any prostitute, shall be deemed to be unlawfully within the United States and shall be deported in the manner provided by sections twenty and twenty-one of this Act. . . ." Section 20 provides that any alien who enters the United States in violation of law, etc., shall, upon the warrant of the Secretary of Commerce and Labor, be deported to the country whence he came within three years after his entry into the United States. Section 21 provides that the Secretary of Commerce and Labor, upon being satisfied that an alien is found in the United States in violation of the act or is subject to deportation under the act or any law of the United States, shall cause such alien to be taken into custody and returned to the country whence he came within three years after landing or entry in the United States. The act also provides for a hearing before an inspector or commissioner under rules prescribed by the Secretary of Commerce and Labor. The inspector or commissioner reports his conclusions and the testimony on which they are based to the Secretary, who, after examination, may order a release or deportation, as in his judgment the case may warrant. Under this statute the Secretary of Commerce and Labor has provided certain instructions and rules, some of which will be hereinafter noticed.

That Congress may pass laws forbidding aliens or classes of aliens from coming within the United States and may provide for the expulsion of aliens or classes of aliens from

its territory, and may devolve upon the executive department or subordinate officials the right and duty of identifying and arresting such persons, is settled by previous decisions of this court. *Wong Wing* v. *United States*, 163 U. S. 228, 237.

A series of decisions in this court has settled that such hearings before executive officers may be made conclusive when fairly conducted. In order to successfully attack by judicial proceedings the conclusions and orders made upon such hearings it must be shown that the proceedings were manifestly unfair, that the action of the executive officers was such as to prevent a fair investigation or that there was a manifest abuse of the discretion committed to them by the statute. In other cases the order of the executive officers within the authority of the statute is final. *United States* v. *Ju Toy*, 198 U. S. 253; *Chin Yow* v. *United States*, 208 U. S. 8; *Tang Tun* v. *Edsell*, 223 U. S. 673.

In the case of *Yeung How* v. *North*, 223 U. S. 705, decided at the present term, this court dismissed the appeal in a *per curiam* opinion. An examination of that case shows that it was in all respects like the case at bar, so far as the status of Yeung How, the person deported, is concerned, she being a Chinese woman who had married a Chinaman of American birth, except that the husband of Yeung How was dead, so that at the time of the deportation order she was the widow of an American citizen. An examination of the briefs in that case show that it was contended in behalf of the petitioner that the statute and procedure thereunder, the case being one of the deportation and not of the admission of an alien, deprived the petitioner of due process of law under the Constitution of the United States, inasmuch as there was no provision by which the petitioner could procure or compel the attendance of witnesses, and because the statute made no provision for the punishment of a witness giving false

testimony against the detained person, and because such alien, lawfully within this country could not be deported without a hearing of a judicial character. Notwithstanding these alleged infractions of constitutional right, this court dismissed the appeal.

In the case now under consideration, the proceedings and order for deportation were attacked by a writ of *habeas corpus* filed in the District Court of the United States for the Northern District of California. The case was decided upon demurrer, and the question, therefore, arises whether, upon the allegations well pleaded, a case was made for the discharge of the prisoner. The petition abounds in conclusions of law. We will examine such of the allegations advanced as a basis for the relief sought as state facts. The petitioner, Low Wah Suey, who instituted the proceedings in behalf of his wife, Li A. Sim, alleged that he was a resident of the city and county of San Francisco, California, born in the United States of parents regularly domiciled therein; that consequently he is a citizen of the United States and of the State of California; that he was married to Li A. Sim on the tenth of March, 1910, in Hong Kong, a British province, and that they have since been and were at the date of the filing of the petition husband and wife; that they entered the United States on the fifteenth of September, 1910; that the entry was lawful, and that until the commencement of proceedings for deportation they continuously lived and cohabited together as husband and wife; that they had a son, Low Sang, born to them on February 9, 1911, at their home in the State of California; and that both Low Wah Suey and Li A. Sim are citizens of the State of California. The arrest and hearing before the Commissioner of Immigration at the port of San Francisco are recited, as is the approval of the Secretary of Commerce and Labor and the warrant for deportation. It is further alleged that Li A. Sim was refused the right to be repre-

sented by counsel during all stages of the preliminary proceedings, and was examined without the presence of her counsel and against her will by the immigration officer at the port of San Francisco, and before she had been advised of her right to counsel and before she was given an opportunity of securing bail, and that afterwards an examination was conducted by the immigration officer, acting under the orders of the Commissioner of Immigration, at which she was questioned by the immigration inspector against her will and without the presence of counsel, who was refused permission to be present, and that at certain stages of the proceedings she was refused the right to consult with counsel. This objection, in substance, is that under examination before the inspection officer at first she had no counsel. Such an examination is within the authority of the statute, and it is not denied that at subsequent stages of the proceedings and before the hearing was closed or the orders were made she had the assistance and advice of counsel.

It is next averred that the Secretary of Commerce and Labor and the Commissioner of Immigration refused to take the necessary steps to enforce the attendance of witnesses to testify on behalf of the petitioner, although it is said that the immigration officers did use their power to procure witnesses to testify against her; and that had such witnesses as she wished been produced, she says, upon information and belief, that the testimony in the record would have been such as to require a different order by the Secretary of Commerce and Labor, and sufficient to prevent the issuing of the order of deportation. The statute does not give authority to issue process to compel the attendance of witnesses. It does not appear from the record that any witnesses offered on behalf of the petitioner were not heard or that anything was done to prevent the production of such witnesses, and the nature and character of the proposed testimony offered is not set forth. This

objection was urged in the *Yeung How* v. *North* case, and the lack of power to compel witnesses by the immigration officer was alleged as depriving the appellant of due process of law. This court dismissed the case upon reference to other cases which indicate its view that no constitutional right was thereby taken from the petitioner. The former cases have sustained the right to provide for such hearing, and nothing was done to prevent the production of such witnesses as the petitioner might have seen fit to produce.

It is further alleged that the executive officer acted in bad faith and arbitrarily in receiving a report based on hearsay information, the name of the informer being withheld from Li A. Sim and no opportunity being given her to offset or disprove such hearsay evidence. The nature and character of this testimony is not set forth, and we have no means of knowing it was not such as might properly have been considered in such a hearing.

It is alleged that the rules of the Secretary of Commerce and Labor are arbitrary and illegal, particularly certain sections of Rule 35. From these rules, it appears, that, while provision is made for an examination in the absence of counsel, it is provided that a hearing shall be had at which the alien shall have full opportunity to show cause why he should not be deported, and that, at such stage of the proceedings as the person before whom the hearing is held shall deem proper, the alien shall be apprised that he may thereafter be represented by counsel, who shall be permitted to be present at the further conduct of the hearing, to inspect and make a copy of the record of the hearing so far as it has proceeded and to meet any evidence that theretofore has been or may thereafter be presented by the Government, and it is further provided that all the papers, including the minutes and any written argument submitted by counsel, together with the recommendations, upon the merits, of the examining officer and the officer in charge shall be forwarded to the Department as

,the record on which to determine whether or not a warrant for deportation shall issue. Considering the summary character of the hearing provided by statute and the rights given to counsel in the rules prescribed, we are not prepared to say that the rules are so arbitrary and so manifestly intended to deprive the alien of a fair, though summary, hearing as to be beyond the power of the Secretary of Commerce and Labor under the authority of the statute.

The petition would be much more satisfactory if the general rule had been complied with and the proceedings had before the immigration officer had been set out. As a general rule in *habeas corpus* proceedings a copy of the record of the proceedings attacked is required. *Craemer* v. *Washington*, 168 U. S. 124, 128, 129. The reasons given for failure to comply with this rule, as stated in the petition, are that the record is too voluminous to be made a part thereof, that to incorporate a copy of the entire proceedings would "burden the petition and cloud the issue," that the petitioner was not in the possession of the entire record and was unable to secure it in time to file it with his petition, and that the Commissioner of Immigration had a copy of the record which he could produce with the body of Li A. Sim. It does not appear that a copy of the essential part of the proceedings was not in the possession of the petitioner or could not be had, and so far as it was within his power he should have complied with the rule.

An examination of the petition, omitting such allegations as are merely conclusions or charges of bad faith, we think, justified the court below in sustaining the demurrer, provided that, at the time of the arrest and order of deportation, Li A. Sim was an alien within the meaning of the statute which provides for the deportation of any alien found as an inmate of a house of prostitution or practicing prostitution after entering the United States, when the

proceeding shall be instituted within three years from. the entry of such alien into this country.

The statute in terms applies in general to all aliens. An alien has been defined to be "one born out of the jurisdiction of the United States, and who has not been naturalized under their Constitution and laws." 2 Kent, 50; 1 Bouvier Law Dictionary, 129. Within this general description Li A. Sim would clearly come, unless her status was changed, as is alleged, by marriage to a Chinaman of American birth, who is consequently an American citizen. It is unnecessary to discuss the effect of such marriage at common law, as in this country the matter is regulated by statute. Section 1994 of the Revised Statutes provides:

"Any woman who is now or may hereafter be married to a citizen of the United States, and who might herself be lawfully naturalized, shall be deemed a citizen."

This section is said to originate in the act of Congress of February 10, 1855 (10 Stat. 604, c. 71), which in its second section provided "that any woman, who might lawfully be naturalized under the existing laws, married, or who shall be married to a citizen of the United States, shall be deemed and taken to be a citizen." This section was construed in *Kelly* v. *Owen,* 7 Wall. 496, and was held to confer the privileges of citizenship upon women married to citizens of the United States, if they were of the class of persons for whose naturalization the acts of Congress provide. So under the present statute, when a woman who could be naturalized marries a citizen of the United States, she becomes by that act a citizen herself.

Li A. Sim was a Chinese person not born in this country, and could not become a naturalized citizen under the laws of the United States. *Fong Yue Ting* v. *United States,* 149 U. S. 698, 716; Act of May 6, 1882 (22 Stat. 58, 61, § 14, c. 126). Being incapable of naturalization herself, although the wife of a Chinaman of American birth, she remained an alien and subject to the terms of the act, un-

less it can be successfully maintained that she was not within the intent and purpose of the act when it is properly construed. In this behalf the argument of her counsel is that Congress did not intend, notwithstanding the terms of the act in question, to make it applicable to a Chinese woman married to an American citizen lawfully domiciled within this country.

To sustain this position *Gonzales* v. *Williams*, 192 U. S. 1, is cited by counsel. In that case this court held that Isabella Gonzales, an inhabitant of Porto Rico at the date of the proclamation of the treaty of 1898, could not be prevented from landing and detained by an immigration inspector as an alien immigrant in order that she might be returned to Porto Rico, it appearing likely that she might become a public charge. This court held that she had been made by act of Congress a citizen of Porto Rico; that she was within the class absolved from all previous allegiance to the Spanish Government; that the act excluding alien immigrants was intended to apply to foreigners as respects this country, to persons owing allegiance to a foreign government and citizens or subjects thereof; that citizens of Porto Rico whose permanent allegiance was due to the United States and who lived in the peace of its dominion, the organic law of whose domicile was enacted by the United States and enforced through its officials, could not be considered alien immigrants within the meaning of the exclusion act of March 3, 1891 (26 Stat. 1084, c. 551). From a reading of that case it is manifest that this court did not think that Congress intended to exclude those over whom it had acquired jurisdiction under the Treaty of Paris and the subsequent legislation of Congress, whose sole allegiance was to this country and who were not aliens to it in any just sense of the term.

The case of *United States* v. *Mrs. Gue Lim*, 176 U. S. 459, is also relied upon. We think that case is readily distinguished from the one at bar. It was there held, that

the wife of a Chinese merchant entitled by treaty to come into this country and dwell here could not be required to furnish the certificate required by the statute from Chinese persons other than laborers, as such construction of the statute would lead to absurd results in requiring a certificate from the wife of a merchant in regard to whom it would be impossible to give the particulars which the statute required should be stated in the certificate; that the real purpose of the statute was not to prevent the persons named, who under the second article of the treaty had the right to come into this country, from entering, but was to prevent Chinese laborers from entering under the guise of being one of the classes permitted to enter. "To hold that a certificate is required in this case," the court said, at p. 468, "is to decide that the woman [the wife of a Chinese merchant] cannot come into the country at all, for it is not possible for her to comply with the act, because she cannot in any event procure the certificate even by returning to China. She must come in as the wife of her domiciled husband or not at all," and it was held that the act was never intended to exclude the wife and minor children of a merchant lawfully entitled to enter.

It is argued that, being a citizen of California, the petitioner and her husband are to be protected from the operation of the act. Assuming that they are citizens of California, there is nothing in that fact to prevent the officers of the United States from exercising the authority conferred upon them to exclude or deport aliens or others who are such within the terms of the Federal law.

We find nothing in the previous decisions of this court which exempts Li A. Sim from the operations of the statute as an alien person. True it is, as contended, that all statutes must be given a reasonable construction, with a view to effecting the object and purposes thereof. It was the manifest purpose of Congress in passing this law to prevent the introduction and keeping in the United States

of women of the prohibited class. The object of the act was to exclude alien prostitutes, or, if they entered and were found violating the statute within the period prescribed, to return them to the country whence they came. A married woman may be as objectionable as a single one in the respects denounced in the law. There is nothing in the terms of the act showing the congressional purpose to exclude from its provisions an alien who had previously married or who might marry an American citizen. Indeed, if this construction were adopted, the marriage of such alien to a countryman of American citizenship who might be ignorant of the conduct of the alien or willing to condone it, would afford an easy means of evading the statute. In the present case, in view of the finding of the immigration officer, approved by the Secretary of Commerce and Labor, it must be taken as true that Li A. Sim, notwithstanding her marriage relation, was found in a house of prostitution in violation of the statute. This situation was one of her own making, and, conceding her right to come into the United States and dwell with her husband because of his American citizenship, it is obvious that such right could have been retained by proper conduct on her part and was only lost upon her violation of the statute, she, being an alien, thereby forfeiting her right to longer remain in this country. If it be admitted that the present is a hard application of the rule of the statute, with the effect of such law this court has nothing to do. The provisions of the statute are plain, and it was passed by Congress with full power over the subject. In our view the present case is brought within the terms of the law, when given a reasonable construction with a view to effecting its purposes. If it ought to be amended so as to except from its operation alien wives of American citizens, that result can only be legitimately obtained in the exercise of legislative authority.

*Judgment affirmed.*