IN THE MATTER OF THE APPLICATION OF MASUICHI TANAKA FOR A WRIT OF HABEAS CORPUS.

November 8, 1913.

*Aliens—Immigration—Birth certificate as evidence of status: Held,*

under the evidence before the board of special inquiry of the immigration service, that the board was justified in regarding the prima facie weight of a certificate of Hawaiian birth, issued by the Secretary of the Territory of Hawaii, as having been overcome.

*Habeas corpus*: On return to writ.

*J. Lightfoot* for petitioner.
*C. C. Bitting,* Assistant U. S. Attorney, for respondent.

CLEMONS, J. The petitioner, Tsuneichi Tanaka, on arrival from Japan at the port of Honolulu, was found by a board of special inquiry to be an alien afflicted with trachoma, a dangerous contagious disease, and was denied a landing. His appeal to the Secretary of Labor was dismissed and the order denying a landing confirmed. In order to secure his release from the custody of the respondent (the inspector in charge of the immigration station at this port), the petitioner applied for a writ of habeas corpus, on the ground that he is in fact an American citizen, by virtue of his birth in Hawaii, and that he offered to prove before the board of special inquiry that he had a certificate of Hawaiian birth (issued by the Secretary of the Territory) and to prove his identity as the person named in the certificate, but that the hearing before the board was "unfair, unjust, unlawful, and irregular, in this, that petitioner was not allowed to show by the said Hawaiian birth certificate and otherwise, that he is a citizen of the United States of America," and was not allowed to show that he is the same person "referred to" in this certificate, though there designated Masuichi Tanaka instead of Tsuneichi Tanaka. The writ issued, and before any return thereto a supplementary petition was filed substantially the same as the original petition except that it annexed thereto, in accordance with the practice indicated in *Low Wah Suey v. Backus,* 225 U. S. 460, 472, a transcript of the proceedings before the immigration officers.

The petition and supplementary petition, together with the transcript of proceedings attached thereto and made a part thereof show not only a hearing but a rehearing, the latter had after the affirmance by the Secretary of Labor of the board's finding upon the first hearing, and at the rehearing the introduction of the birth certificate, a transcript of the evidence upon which it was obtained, and oral testimony in addition thereto in petitioner's behalf.

The transcript of the rehearing proceedings shows that the petitioner then indicated his desire to appeal, but nothing appears in the record to show that an appeal was had. The petitioner makes no objection of having been denied an appeal or of being refused the hearing of any evidence which he had to offer, but rests his case solely upon the contention that the board did not give due weight to the birth certificate or to the other evidence in his behalf.

The respondent's return amounts to a demurrer to the petition, by referring thereto and particularly to the transscript of the proceedings incorporated therein, as justification for the alleged unlawful detention of the petitioner in the custody of the respondent. A demurrer attacked the return on the general ground of insufficiency.

As this demurrer is a demurrer to what is in effect another demurrer (the answer), the whole record is open to examination. Andrews' Stephen on Pleading, 2d ed., 268-269, sec. 140.

It is very clear that the petitioner was given every opportunity to make what case he could, and it is equally clear that the discrepancies in the testimony, and the doubts which they raise, pointed out by inspector Moore in his statements appearing at pages 16-17 and 29-30 of the transcript annexed to the supplementary petition, are ample to overcome any prima facie weight of the certificate as evidence of the petitioner's birth in Hawaii. *In re Lee Leong,* ante p. 258. The board's finding is so clearly justi-

fied by the evidence before it, as to make any discussion of this evidence unprofitable.

Moreover, the testimony appearing in the transcript attached to the birth certificate, being the testimony upon which the certificate was issued, would seem to indicate that the certificate had been issued upon an insufficient showing, resting as it does upon the testimony of the alleged father and of Tomizo Munesato, the former of whom had not, so far as appears, seen his alleged son, now of the age of eighteen years, since the son was three years old, and the latter of whom had not, so far as appears, seen the son since the son was less than two months old. Zenkichi Ouye and Tomizo Munesato, in affidavits attached to the application for the certificate, depose to having "frequently seen the said child, often at daily intervals and often at intervals not exceeding weekly," and having "noticed the child grow from infancy to its present age;" and each deponent gives as "the reason of the frequent observation," "the fact that this deponent lived as a neighbor of Umematsu Tanaka" (the father) and he visited at the house frequently and became a very intimate friend of Umematsu Tanaka. But the alleged father appears to have resided in Hawaii since his return from Japan in 1898, Ouye to have resided in Hawaii since 1890 and Munesato since 1892, while the alleged son has resided in Japan since 1895. So, even though neighbors of the father's, the two deponents were not in a position to "notice the child grow from infancy to its present age." Ouye did not testify at all before the Secretary of the Territory, and Munesato's testimony does not show that he ever saw the child after his departure for Japan. But quite apart from any suggestion that the issuance of the certificate was unwarranted, the board of special inquiry was fully justified in regarding the certificate as discredited by the evidence before it.

Let the writ be discharged and the petitioner remanded to the custody of the respondent.

As supplementing this decision, and in explanation of the record, it may be said that through inadvertence, an order to show cause issued upon the filing of the supplementary petition. The return, nominally a return to the order to show cause, has, therefore, been regarded herein as a return to the writ, which had originally been issued in the case. I may say that the practice which has lately become a rule of this court, to issue in the first instance an order *nisi* instead of a writ, had my approval in *In re Hausman,* ante p. 202, and I am convinced that such practice would, under the showing made by the transcript annexed to the supplementary petition, have been justified in this case.