## UNITED STATES ex rel. KASPARIAN v. HUGHES, Immigration Com'r.

(District Court, E. D. Pennsylvania.   January 17, 1922.)

No. 2441.

1. **Aliens ⬿53—"Knowingly" distributing seditious literature imports knowledge of its character.**

To authorize the deportation of an alien as unlawfully in the United States, in violation of the provision of Act June 5, 1920, which excludes aliens "who knowingly circulate, distribute, * * * any written or printed matter advising, advocating or teaching the overthrow by force or violence of the government of the United States or of all forms of law," it must appear that the alien had knowledge of the contents or character of the literature distributed by him.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Knowingly.]

2. **Aliens ⬿54—Order of deportation, based on erroneous construction of statute, invalid.**

An alien held for deportation is entitled to discharge on habeas corpus, where the record shows that there was an entire absence of essential evidence to warrant deportation, and that the order was based on an erroneous construction of the statute.

Habeas Corpus.   Petition by the United States, on the relation of Vahan Kasparian, against James L. Hughes, Commissioner of Immigration.   Writ granted.

Fred J. Shoyer, of Philadelphia, Pa., for relator.

John Robert Jones, Asst. U. S. Atty., and George W. Coles, U. S. Atty., both of Philadelphia, Pa., for defendant.

THOMPSON, District Judge.   The relator, an alien, 19 years of age, born in Armenia, Turkey, landed at the port of New York in May, 1920.   In the latter part of April, 1921, about 11 o'clock at night, he was observed in company with another Armenian, Pilbosian, in the neighborhood of Fifty-Second and Walnut streets, Philadelphia, distributing circulars, some of which were headed "May Day.  Red Labor Day," and the others "May Day of Revolution."   The two men were arrested by a policeman, and charged, under the Pennsylvania Act of June 26, 1919 (P. L. 639; Pa. St. 1920, §§ 8040, 8041), with sedition.   The act, as far as it applies to the present case, defines and punishes sedition as follows:

"Be it enacted, etc., that the words 'sedition,' as used in this act * * * shall also include:  * * *

"(g) The sale, gift, or distribution of any prints, publications, books, papers, documents, or written matter in any form, which advocates, furthers, or teaches sedition as hereinbefore defined.  * * *

"Section 2.   Sedition, as defined in section 1 of this act, shall be a felony, and any person convicted thereof shall be sentenced to a fine of not less than $100 and not more than $10,000, and to imprisonment not exceeding twenty years, either or both, in the discretion of the court."

He was tried and found guilty.   While confined at Moyamensing Prison, a warrant of arrest, issued by the immigration officials of the

Department of Labor, was served upon him, and a hearing had upon the charge that—

"he knowingly had in his possession for the purpose of circulation or distribution printed matter advising the overthrow by force or violence of the government of the United States or of all forms of law."

Upon the recommendation of the Commissioner of Immigration, the Acting Secretary of Labor issued an order of deportation upon the ground that from proofs submitted to him, after due hearing before the immigrant inspector, he had become satisfied that the alien was in the United States in violation of the Act of October 16, 1918, as amended by the Act of June 5, 1920, to wit:

"That he writes, publishes or causes to be written or published or knowingly circulates, distributes, prints or displays or knowingly causes to be circulated, distributed, printed, published or displayed or knowingly had in his possession for the purpose of circulating, distributing, publishing or displaying written or printed matter, advising, advocating or teaching the overthrow by force or violence of the Government of the United States or of all forms of law."

From the evidence at the hearing, it appears that the relator was employed as a coffee man in a restaurant at Fifteenth and Chestnut streets, and, upon the night in question, he was with Pilbosian, distributing circulars which clearly by their terms advise, advocate, and teach the overthrow by force or violence of the government of the United States. The relator, who was examined through a Turkish interpreter, stated that when he was with Pilbosian that night a man gave them the papers to be distributed, paying them $3 for their services, and promising that, when they got through distributing them all, he would give them more money, and that the papers were grocery advertisements. The relator admitted the distribution of the circulars, and stated that he had been distributing them two or three minutes when he was arrested. He stated that he could not read any of the circulars, and that he could not read or write English. The officer who arrested him was the only other witness examined, and he testified merely to seeing the papers distributed and taking some of them from the relator's possession.

In the petition for the writ the relator alleges that at the time of his arrest he was unable to read, write, or fully understand the English language, and that he was unaware of the contents of the circulars distributed; that he was at no time prior to his arrest or subsequent thereto connected or associated in any manner with any so-called "Red" organizations or associations for the spread of seditious or anarchistic doctrine or propaganda. The Act of October 16, 1918, 40 Stat. 1012, as amended by the Act of June 5, 1920, 41 Stat. 1008, authorizes the exclusion and expulsion from the United States of—

"(d) Aliens who write, publish, or cause to be written or published, or who knowingly circulate, distribute, print, or display, or knowingly cause to be circulated, distributed, printed, published, or displayed, or who knowingly have in their possession for the purpose of circulation, distribution, publication, or display, any written or printed matter, advising, advocating, or teaching: * * * (1) The overthrow by force or violence of the government of the United States or of all forms of law."

It is contended on behalf of the relator that the order of deportation was issued in pursuance of a hearing at which the evidence adduced did not establish knowledge on the part of the respondent of the unlawful nature of the contents of the circulars he was distributing, and that the only evidence upon that subject was that of the relator himself, who through an interpreter testified that he could not read or write English, and that he did not know the contents of the circulars.

[1] It will be observed that the act of assembly of Pennsylvania under which he was prosecuted and convicted makes the act of distributing documents teaching sedition a felony, without the necessity of proof of knowledge of the seditious nature of the contents, while the act of Congress of June 5, 1920, excludes from admission those who knowingly circulate, knowingly cause to be circulated, or knowingly have in their possession for the purpose of circulation the prohibited matter. It is contended on the part of the government that the offense was complete when the relator knowingly circulated and distributed, whether or not he knew that the contents of the circulars distributed were of a seditious nature, and this thought seems to have been in the minds of the administrative officers in their construction of the law.

In the memorandum of the Commissioner General for the Acting Secretary of Labor of July 26, 1921, offered in evidence upon the hearing on habeas corpus, it is stated:

"It will be noted that there is nothing in the charge which sets forth that the aliens found distributing such literature shall know the nature of these papers, but that it is merely necessary that they shall knowingly distribute same. The charge in the warrant has been sustained in each case."

And in the memorandum for the Acting Secretary of August 6, 1921, it is stated:

"The act makes the mere knowingly having in his possession prohibited literature, this with a view to its distribution, etc., mandatory (or seeming mandatory) cause for deportation of an alien, and it is not essential that the alien have knowledge of the contents of that literature. The act may be regarded (and is) far-reaching and drastic in this respect, and, it is my understanding, was intended to be so; otherwise, its purpose would be easily capable of defeat by merely advancing a claim of lack of knowledge of the nature of the literature.

"If the. letter of the law is to be observed there will, of course, be no difficulty in arriving at a decision in the cases. If, on the other hand, recognition is to be given to the probable (on the record) lack of guilty intent on the part of the aliens a rather vexatious question will be raised, as the authority of the department to read into the statute something which is not there and which would be out of harmony with its express language is not apparent."

It is apparent that it was upon this theory of the meaning of the statute the order of deportation was based. While Congress, in execution of its power to expel from the United States any alien considered undesirable, could include within the undesirable classes those who distribute seditious literature without knowledge of its character, it is clear that the officials of the department misinterpreted the mean-

ing of the statute. That statutes creating an offense "knowingly" committed import knowledge as to all the essential ingredients of the offense is an undoubted and well-recognized rule of construction and a reasonable one. If the mere distribution without further knowledge were sufficient, the word "knowingly" would be superfluous, as one could not well distribute circulars without knowledge that he was distributing them.

A charge in an indictment of unlawfully, willfully, and knowingly depositing and causing to be deposited in the post office for mailing and delivery a book declared to be unmailable because of its indecent character was held in the case of Price v. United States, 165 U. S. 311, 17 Sup. Ct. 366, 41 L. Ed. 727, to mean that the defendant deposited in the mails a book which he knew to be indecent. The case followed Rosen v. United States, 161 U. S. 29, 16 Sup. Ct. 434, 480, 40 L. Ed. 606, in which the same statute was under consideration, and it was held (161 U. S. 33, 16 Sup. Ct. 435, 40 L. Ed. 606) that the words "unlawfully, willfully, and knowingly," which apply to an act or thing done in connection with the statute under consideration, "could not have been construed as applying to the mere depositing in the mail of a paper the contents of which at the time were wholly unknown to the person depositing it."

In order to have ground for deportation, it was necessary that the Department of Labor should be satisfied, not only that the relator distributed the seditious circulars, but that he knew the contents to be of a seditious character. If it had been shown that the relator could at the time of his arrest read the English language, there would have been evidence on which to base a conclusion that he knowingly committed the act charged. Any evidence, however slight, would have been sufficient. The only evidence upon the subject was derived from the statement of the alien himself. The Secretary of Labor was at liberty to disbelieve the testimony of the respondent, but that would leave the case with the mere naked fact of distribution, together with the additional fact that the relator was an Armenian, whose statement it was necessary to take through a Turkish interpreter.

[2] Taking the record as a whole, there was entire absence of evidence of knowledge, and that is conceded in the memoranda furnished to the Secretary by the government officials. It is well established that, in reviewing departmental action under a statute of this nature, the finding of the department is binding upon the court, if there is any evidence, however slight, and unless there is an abuse of discretion, or the proceedings are not fairly conducted, the court is without jurisdiction to interfere. Low Wah Suey v. Backus, 225 U. S. 460, 32 Sup. Ct. 734, 56 L. Ed. 1165; Turner v. Williams, 194 U. S. 279, 24 Sup. Ct. 719, 48 L. Ed. 979; Fong Yue Ting v. United States, 149 U. S. 698, 13 Sup. Ct. 1016, 37 L. Ed. 905.

This is not a case in which the court is passing upon the cogency of the evidence, in determining whether the evidence upon the subject of knowledge would have moved this court to the conclusions at which the Department arrived. The record shows there was concededly no

evidence that the relator knowingly committed the acts charged, and that the conclusion of the department was based upon an erroneous construction of the statute.

It is therefore ordered that the relator be discharged.