### Ex parte LA MATINA.

### UNITED STATES v. UNITED STATES IMMIGRATION INSPECTOR et al.

(District Court, D. Connecticut. May 14, 1925.)

No. 2806.

1. Aliens ⬩⟶54 — On re-entry after absence from country over six months, period for deportation starts anew.

The period of five years after entry for deportation, provided by Immigration Act 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), starts anew on re-entry, where an alien, after residing in the United States over five years, is absent from it for over six months, the limit under immigration laws, of a temporary absence, though he had intended to return to the United States.

**2. Aliens ☜54—Department finding in deportation proceeding binding, if having support in evidence.**

On review by habeas corpus of a deportation warrant finding by the department after a fair hearing is binding, if reasonable and having support in the evidence.

**3. Aliens ☜54 — For readmission notwithstanding disability, alien must show it was contracted in World War.**

An alien who left the country and served in the World War in the army of a cobelligerent of the United States, and so by provision of Act Oct. 19, 1918 (Comp. St. Ann. Supp. 1919, § 4289¼bbb), notwithstanding disability, "shall be readmitted if it is proved that the disability was acquired while" he was so serving, has the burden of such proof.

Application for habeas corpus by Salvatore La Matina against United States Immigration Inspector William M. Clark and others. Application dismissed.

Mascolo & Dauch, of Waterbury, Conn., for applicant.

John Buckley, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn.

THOMAS, District Judge. Salvatore La Matina, aged 31, an alien, a native and subject of Italy, lived in Waterbury, Conn., with his wife and three year old child. He is a literate laborer. He first came to this country in 1909. He remained here until December, 1915, when he volunteered to fight for Italy in the World War. His passage to Italy was paid by the Italian government. He served in the Italian army for four years and was wounded twice. After leaving the Italian army he was married in Italy and returned to the United States on July 30, 1920, on the steamship Patria, third class, accompanied by his wife. The Italian government paid the passage for both. One week after the latter arrival in the United States he was sent to a hospital in New Haven, Conn., and from there committed to the Connecticut State Hospital at Middletown, Conn., where he is now confined as an insane public charge and is suffering from dementia præcox, due to causes existing prior to his last entry into the United States. The alien has a brother, Francesco La Matina, a patient in the same hospital at Middletown, Conn. He also has a brother, Vincenzo, living in Waterbury, Conn., and his mother is living in Italy.

On April 24, 1924, the Secretary of Labor issued a warrant directing the arrest and deportation of the alien on the ground that he was a person likely to become a public charge at the time of his entry, and that he has become a public charge in the State Hospital within five years after his entry into the United States, in that he has become insane. The warrant further alleges that the insanity was not affirmatively shown to have arisen subsequent to his entry. The alien, through his counsel, filed an application for a writ of habeas corpus in this court on the ground that the alien cannot be deported. The reasons urged by the alien are two: First, that he was a resident in this country for more than five years continuously before he became a public charge; and, second, that he comes within the Act of October 19, 1918, which provides, in substance, that an alien who might otherwise be liable to deportation on the ground that he might become a public charge, but who enlisted in the army of one of the cobelligerents of the United States in the World War and sustained the disability, including insanity, which was acquired while the alien was serving in the military forces of that nation, shall be readmitted, if it is proved that the disability was so acquired.

[1] Respecting the first reason, the statutes involved are sections 3 and 19 of the Immigration Act of 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 4289¼b, 4289¼jj), which sections read as follows:

"That the following classes of aliens shall be excluded from admission into the United States: All idiots, imbeciles, feeble-minded persons, epileptics, insane persons; persons who have had one or more attacks of insanity at any time previously; persons of constitutional psychopathic inferiority; ＊ ＊ ＊ paupers; ＊ ＊ ＊ persons not comprehended within any of the foregoing excluded classes who are found to be and are certified by the examining surgeon as being mentally or physically defective, such physical defect being of such a nature which may affect the ability of such alien to earn a living; ＊ ＊ ＊ persons likely to become a public charge; ＊ ＊ ＊ shall be deemed to be in the United States contrary to law, and shall be subject to deportation as provided in section nineteen of this act."

Section 19 provides:

"That at any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law, ＊ ＊ ＊ any alien who shall have entered or who shall be found in the United States in violation of this Act, or in violation of any other law of the United States, ＊ ＊ ＊ any alien who within five years after entry becomes a public charge

from causes not affirmatively shown to have arisen subsequent to landing, * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported."

It will be noted that the alien, although he served in the World War, was absent from this country from 1915 to 1920. He was a subject of Italy when he left the country, and while the evidence taken before the immigration inspector shows that he had intended to return to this country, nevertheless, a period of five years had elapsed from the time of his departure until his return, and under our immigration laws no period of absence for more than six months is regarded as a temporary absence, and the alien would then be placed in the same class as any other alien applying for admission. Woo Shing v. U. S. (C. C. A.) 282 F. 498; U. S. ex rel. White v. Hook, Warden (D. C.) 166 F. 1007; U. S. ex rel. Ueberall v. Williams, Com'r (D. C.) 187 F. 470; Ex parte Pouliot (D. C.) 196 F. 437.

The petitioner claims that the intention of the alien concerning his return to this country should govern, but I am unable to find any authority that makes any exception where the absence has been for a period of more than six months, nor have counsel cited any authority in their brief other than records of some cases of the immigration authorities at Ellis Island. The law itself provides for no exception and the facts, undisputed in this case, show an absence of five years and leave the court without discretion, even for so worthy a cause as a voluntary enlistment in the army of an ally. The situation here presented is all the more unfortunate as well as distressing because the applicant served in the Italian army in the campaigns of 1915, 1916, 1917, and 1918 and received a War Cross of merit, was wounded and awarded the "Distinction of Honor" by his government. It also appears that both he and his wife lost practically their entire families in the war, but I am without authority to find, under the provisions of the law, that his absence was a temporary one, even though the intention to return seems clear.

[2, 3] Coming, then, to the second question: Does the alien come under the provisions of the Act of Congress approved October 19, 1918 (40 Stat. 1014 [Comp. St. Ann. Supp. 1919, § 4289¼bbb])? The pertinent part of that section, in so far as it applies here, reads as follows:

"Chapter 190. Joint Resolution authorizing the readmission to the United States of certain aliens who have been conscripted or have volunteered for service with the military forces of the United States or cobelligerent forces.

"Resolved by the Senate and House of Representatives of the United States of America in Congress Assembled, that, notwithstanding the provisions of section three of the Immigration Act of February fifth, nineteen hundred and seventeen, excluding from the United States aliens who are likely to become a public charge, or who are physically defective, or who are * * * illiterate, aliens lawfully resident in the United States when heretofore or hereafter enlisted or conscripted for the military or naval service of the United States, or of any one of the nations cobelligerent of the United States * * * attached to the United States Army or to the army or navy of any one of the cobelligerents of the United States in the present war, who may during or within one year after the termination of the war apply for readmission to this country, after being honorably discharged or granted furlough abroad by the proper military or naval authorities, or after being rejected on final examination in connection with their enlistment or conscription shall, within two years after the termination of the war, be readmitted; and that any alien of either of the foregoing descriptions who would otherwise be excluded under said section of the immigration Act on the ground that he is idiotic, imbecile, feeble-minded, epileptic, insane, or has had one or more attacks of insanity, or on the ground that he is afflicted with constitutional psychopathic inferiority, tuberculosis, a loathsome or dangerous contagious disease, or mental defect, shall be readmitted if it is proved that the disability was acquired while the alien was serving in the military or naval forces of the United States or of any one of the nations cobelligerent of the United States in the present war or in an independent force of the kind hereinbefore described, if such alien returns to a port of the United States within two years after the termination of the war. * * * "

It is conceded by the government that the alien returned within the period fixed by Congress after the termination of the war. Approaching this question from the standpoint of the authority of this court, it is a well-established principle that the United States District Court has a right to review a deportation warrant on a writ of habeas corpus. U. S. ex rel. Rennie v. Brooks (D. C.) 284 F. 908. The authority of the court, however, in reviewing the findings of the Department of Labor made after a hearing, has certain limitations as set forth in U. S. ex rel.

Kasparian v. Hughes (D. C.) 278 F. 262. On page 265 Judge Thompson said:

"It is well established that, in reviewing departmental action under a statute of, this nature, the finding of the department is binding upon the court, if there is any evidence, however slight, and unless there is an abuse of discretion, or the proceedings are not fairly conducted, the court is without jurisdiction to interfere. Low Wah Suey v. Backus, 225 U. S. 460, 32 S. Ct. 734, 56 L. Ed. 1165; Turner v. Williams, 194 U. S. 279, 24 S. Ct. 719, 48 L. Ed. 979; Fong Yue Ting v. United States, 149 U. S. 698, 13 S. Ct. 1016, 37 L. Ed. 905."

See, also, Ex parte Ah Sue (D. C.) 270 F. 356; Chin Shee v. White (C. C. A.) 273 F. 801.

The evidence before the immigration inspector established that the applicant is afflicted with a form of disease known as dementia præcox, which is incurable, although a partial improvement may be expected under supervision. The doctor who has had the applicant under observation defines the disease as constitutionally hereditary, and finds that the condition would have existed, even though the applicant had never gone to war. The physician is known to the court to be a reputable, high-standing expert. He is the head of one of the largest institutions for the insane in the state of Connecticut, and his opinion carries great weight. He also testified that the excitement accompanying war might hasten the disease; that is to say, it might aggravate or accelerate the condition but it could not cause the unfortunate mental deterioration that the applicant now exhibits. The applicant introduced no evidence to show that it was not a hereditary disease, or that it was acquired as a result of the war. He seems to have confined himself ot the cross-examination of the government expert, but, should I have reached a conclusion different from that reached by the Labor Department, I would still be without authority to overrule the contention of the government, because it could not be said that the proceedings before the immigration inspector were not fairly conducted, or that there was an abuse of discretion, or that there was no evidence upon which the finding made by the Department could reasonably rest.

The applicant was given a hearing before the immigration inspector and was represented by counsel, as the record shows. This hearing was held in the hospital at Middletown on December 28, 1923. An application for a stay to give the petitioner further opportunity for inquiry into the facts was granted after the original order of deportation had been issued, and a subsequent hearing was held on August 28, 1924, when the petitioner was again represented by counsel. Every legal remedy open to the applicant was exercised. No authority has been cited by the petitioner, nor have I been able to find any in my examination of the cases, which would construe the language of the statutes to read, "shall be readmitted if it is proved that the disability was acquired," or to mean other than what the plain words seem to indicate; that is, that the burden of proof that it was acquired as a result of the war is upon the alien. To state the proposition briefly, without the act of 1918, the alien could not be readmitted, except as, a regular quota alien. He claims to come within the exception of the act of 1918. To come within the exception, he must show that he contracted the disease which made him a public charge because of his service in the War. The Department of Labor has found, as a result of the hearings held, and upon the testimony offered, that the disease was not acquired as a result of the War. This finding is not an unreasonable one, and there is evidence to support it. In fact, there is no evidence to the contrary.

I am constrained to hold that the application for the writ of habeas corpus must therefore be dismissed. So ordered.