UNITED STATES ex rel. PAOLANTONIO v. DAY, as Commissioner of Immigration.

Circuit Court of Appeals, Second Circuit. December 5, 1927.

No. 122.

1. Aliens ⊜54(17)—Courts cannot review weight of evidence sufficient to justify deportation order by immigration authorities (Immigration Act 1917 [8 USCA § 101 et seq.]).

Where evidence justifies action of immigration authorities ordering deportation of alien, claimed to be a person of constitutional psychopathic inferiority at time of entry into the United States, in violation of Immigration Act Feb. 5, 1917 (8 USCA § 101 et seq.), the courts cannot review its weight.

2. Citizens ⊜7—Husband's naturalization after order of deportation of wife as person of constitutional psychopathic inferiority did not make her citizen, defeating power of deportation (Immigration Act, §§ 1, 3, 19 [8 USCA §§ 136, 155, 173, 368]).

Under Act Sept. 22, 1922 (8 USCA § 368), providing that any woman whose husband is

naturalized after passage of act shall not become citizen by reason of such naturalization, and Immigration Act 1917, § 1 (8 USCA § 173), defining alien, husband's naturalization after order of deportation of wife under sections 3 and 19 (8 USCA §§ 136 and 155), providing for deportation of person of constitutional psychopathic inferiority within five years after entry, did not cause his wife to become citizen, and thereby defeat power to deport her.

Appeal from the District Court of the United States for the Southern District of New York.

Application for habeas corpus by the United States on the relation of Angela Paolantonio, against Benjamin Day, as Commissioner of Immigration. Order dismissing the writ, and relatrix appeals. Affirmed.

Harry H. Hoffnagle, of New York City (McCready Sykes, of New York City, of counsel), for appellant.

Charles H. Tuttle, U. S. Atty., of New York City (Alvin McKinley Sylvester, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge. The question raised by this appeal is whether the immigration authorities are empowered to deport an alien woman, who was of constitutional psychopathic inferiority at the time of her entry, and whose husband became a naturalized citizen of the United States after her deportation was ordered.

The facts which present this question are the following: Husband and wife were married in Italy, both being natives and citizens of that country. Thereafter, on August 28, 1920, they arrived at the port of New York and were admitted for permanent residence. They have continued to reside here ever since. In April, 1925, the wife was placed by her husband in the Brooklyn State Hospital, and on July 1, 1925, a certificate was issued by the New York State Hospital Commission to the effect that she had become an insane public charge, due to causes existing prior to her landing in this country. In consequence, a warrant for her arrest, dated July 18, 1925, was issued by the immigration authorities, charging that she was an alien who had entered the United States in violation of the Immigration Act of February 5, 1917 (8 USCA § 101 et seq.), in that she was a person of constitutional psychopathic inferiority at the time of her entry, and in that she has become a public charge in the Brooklyn State Hospital within five years after her entry into the United States from causes not affirmatively shown to have arisen subsequent thereto. The warrant also charged that she was a person likely to become a public charge at the time of her entry, but this ground for deportation is no longer pressed.

After hearings, begun August 7, 1925, before an immigration inspector at Ellis Island, a decision was rendered sustaining the charges, and thereafter on October 21, 1925, the Secretary of Labor ordered her deportation. For adequate reasons, not necessary to specify, execution of the order was delayed. On September 14, 1926, the husband, Nicolo Paolantonio, was admitted to citizenship in the Eastern district of New York. Thereupon he sought to reopen the hearings in his wife's case, contending that the immigration authorities were no longer vested with power to deport her. Failing in his request to have the case reopened, he sued out on her behalf the writ of habeas corpus now before us on appeal. An additional fact, which may evoke sympathy, but cannot affect the legal question, is that three children have been born to the husband and wife during their residence in this country. Since the wife's commitment to the hospital, the children have been in the care of the Department of Public Charities of the City of New York, the husband paying $10 per week for their support.

[1] When the order of deportation was issued, the relatrix was an alien and her husband was an alien. If the order had been immediately executed, the validity of her deportation would have been beyond question. Section 1 of the Immigration Act of 1917 (39 Stat. 874 [8 USCA § 173]) defines "alien" to include "any person not a native-born or naturalized citizen of the United States"; section 3 (8 USCA § 136) places among the classes of aliens to be excluded from admission into the United States "persons of constitutional psychopathic inferiority"; and section 19 (8 USCA § 155) provides that at any time within five years after entry any alien who at the time of entry was a member of one of the classes excluded by law, or any alien who within five years after entry becomes a public charge from causes not affirmatively shown to have arisen subsequent to landing, may be taken into custody and deported. There was evidence ample to justify the action of the immigration authorities, and under such circumstances, the courts cannot review its weight. United States v. Commissioner (C. C. A. 2) 15 F.(2d) 555.

But it is urged that after the husband's naturalization the act of 1917 ceased to be applicable to the relatrix. The argument is that "alien" in the act of 1917 must always

mean what it meant when the act was passed; that when the act was passed the wife of an American citizen was not deportable, as was held in United States v. Tod (C. C. A. 2), 285 F. 523, 26 A. L. R. 1316; and, therefore, that such a wife was not an "alien" within the meaning of the act. But the reason that the wife of a naturalized citizen was not deportable was because the husband's citizenship caused her to cease to be an alien, for she herself became a citizen by virtue of section 1994 of the Revised Statutes:

"Any woman who is now or may hereafter be married to a citizen of the United States, and who might herself be lawfully naturalized, shall be deemed a citizen." Comp. St. § 3948.

That provision was repealed by the Cable Act of September 22, 1922 (42 Stat. 1021), which declares in section 2:

"That * * * any woman whose husband is naturalized after the passage of this act shall not become a citizen of the United States by reason of such * * * naturalization; but, if eligible to citizenship, she may be naturalized upon full and complete compliance with all requirements of the naturalization laws, with the following exceptions. * * *" 8 USCA § 368.

[2] Therefore the husband's naturalization in 1926 did not cause his wife to become a citizen. She remained, as she had always been, an alien, as defined in the act of 1917, and under the provisions of section 19 thereof she is still as liable to deportation as she was before her husband's naturalization.

It is contended that such construction of the statutes is to enlarge the scope of section 19 of the act of 1917 by adding to it a new class of aliens—alien wives of American citizens—created by the Cable Act. This involves a misconception of the Cable Act. It does not create aliens. It deals with those already aliens, and provides the terms upon which they may become citizens. Until they comply with those terms they remain aliens. As was said in United States v. Uhl, 211 F. 628, 631 (C. C. A. 2): "An alien remains such until naturalization is complete." Even before the passage of the Cable Act there might be an alien wife of an American citizen in case the wife was of a race not given the privilege of citizenship by the Act of February 10, 1855 (R. S. § 1994). Low Wah Suey v. Backus, 225 U. S. 460, 32 S. Ct. 734, 56 L. Ed. 1165; Ex parte Leong Shee (D. C. Cal.) 275 F. 364. Further confirmation of the proposition that the alien wife of an American citizen is not exempt from the immigration laws is found in the Immigration Act of 1924 (Comp. St. §§ 4289¾–4289¾nn), which gives such a wife a nonquota status in certain cases, and in other cases a preference within the quota. The appellant's argument that the relatrix is not an alien within the definition of the Act of February 5, 1917, is therefore without merit.

This conclusion, which seems obvious from a consideration of the statutes, also finds support in prior decisions. In United States v. Curran, 9 F.(2d) 900 (C. C. A. 2), this court held that the wife of a naturalized citizen was excludable under the desirability test of section 3 of the Immigration Act of 1917. It is true that that opinion notes that the wife was not in this country when her husband was naturalized, and appellant draws the inference that the decision would have been different, had the case been one of deportation rather than exclusion. Any such distinction would be illogical; no valid reason has been, nor in our opinion can be, assigned for it. We think the Curran Case is practically controlling. Gomez v. Nagle, 6 F.(2d) 520 (C. C. A. 9) is an authority flatly in point. In Dorto v. Clark (D. C. R. I.) 300 F. 568, the construction contended for by appellant seems to have been adopted; but, with deference to the learned District Judge who decided it, we are, for reasons already stated, unwilling to follow it. Dorto v. Clark was affirmed in 5 F.(2d) 596 (C. C. A. 1), but upon other grounds; so that it gained no added authority from affirmance.

For the foregoing reasons, the order dismissing the writ and remanding the relatrix is affirmed.