**UNITED STATES ex rel. SCHLIMMGEN v. JORDAN, Dist. Director of Immigration and Naturalization Service.**

**No. 9296.**

Circuit Court of Appeals, Seventh Circuit.

Dec. 9, 1947.

Rehearing Denied Jan. 16, 1948.

Otto Kerner, Jr., U. S. Atty., John Peter Lulinski and Maurice C. Handelman, Asst. U. S. Attys., and John M. McWhorter, Immigration and Naturalization Service, all of Chicago, Ill., for appellant.

Joseph J. Merensky and T. S. Friedman, both of Chicago, Ill., for appellee.

Before EVANS and MINTON, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Appellee, a German citizen and a registered alien enemy, in a habeas corpus proceeding in the District Court, was discharged from the custody of the Attorney General, who had entered an order for his deportation. The District Director of Immigration and Naturalization appeals. Pertinent provisions of the Immigration Act,

U.S.C.A., Title 8, Sections 136, 155 and 173 appear in the footnote.*

The record of the proceeding before the immigration authorities discloses that several prolonged hearings were held, at all of which appellee was present; that at two or more of these, he was represented by counsel of his own choice; that at all others he expressly disclaimed any desire for and waived counsel, and that not once but repeatedly he was fully advised of the nature of the proceeding and of the possible consequences flowing therefrom.

Courts may not interfere with administrative determinations unless, upon the record, the proceedings were manifestly unfair, or substantial evidence to support the administrative finding is lacking, or error of law has been committed or the evidence reflects manifest abuse of discretion. Low Wah Suey v. Backus, 225 U.S. 460, 32 S.Ct. 734, 56 L.Ed. 1165; Kessler v. Strecker, 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082. Consequently, inasmuch as the party ordered deported can, in a habeas corpus proceeding, complain only of a failure of the administrative officer in one or more of these respects, the court acts upon the record made in the administrative hearing and may not try the issues de novo upon evidence not submitted in the first instance. Kessler v. Strecker, supra; Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938; Lai To Hong v. Ebey, 7 Cir., 25 F.2d 714. This results from the mandate of the statute, par. (a) Section 155, Title 8 U.S.C.A., reading: "In every case where any person is ordered deported from the United States under the provisions of this Chapter, or of any law or treaty, the decision of the Attorney General shall be final."

We think the only justifiable conclusion to be drawn from the record of the numerous sessions is that the hearings were fairly conducted and appellee's rights scrupulously respected.

The facts are very largely undisputed. Indeed, they are, for the most part, derived from appellee's own testimony. Appellee was born in 1901 in Germany. On December 20, 1937 he was admitted into this country for permanent residence upon presentation of a quota immigration visa, obtained in Havana, Cuba. From that time on he pursued his calling of seaman, sailing to various parts of the world, including his native land. Prior to 1938 he spent more time ashore in Germany than in America. His last trip from Germany to the United States occurred in 1939; he was a member of the crew of a steamship sailing on a return voyage from Hamburg, landing in New York March 25, 1939. In late 1939 or early 1940 he shipped from San Francisco, on an American vessel, visiting Los Angeles, Acapulco, Mexico, Panama, Colon, and Havana, Cuba, and landing at New York on February 24, 1940. His counsel deny that he went ashore at any of these ports but the record discloses that when appellee was asked how long his ship was at Havana, he replied "four hours." He was then asked, "were you permitted to go

---

* "Sec. 1. That the word 'alien' wherever used in this Act shall include any person not a native-born or naturalized citizen of the United States; * * *

"Sec. 3. That the following classes of aliens shall be excluded from admission into the United States: * * * persons who have been convicted of or admit having committed a felony or other crime or misdemeanor involving moral turpitude; * * *

"Sec. 19. That at any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law; any alien who shall have entered or who shall be found in the United States in violation of this Act, or in violation of any other law of the United States; * * * except as hereinafter provided, any alien who is hereafter sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, or who is hereafter sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude, committed at any time after entry; * * * any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude; at any time within three years after entry, any alien * * * who enters without inspection shall, upon the warrant of the Attorney General, be taken into custody and deported; * * *"

ashore?" He answered "yes." We think this can be taken only as an admission that he did go ashore. There is no evidence that he left the ship at any other foreign port.

Appellee was convicted in a German court in May 1935, and served three months in a criminal labor camp. Though there was no record evidence of the nature of the charge, appellee at various times admitted that he had been convicted of theft in Germany and at other times said that he was arrested on "suspicion of theft," and tried in a "quick court," upon the testimony of another German who testified that, in a bar-room where several persons were drinking, his purse, containing 60 marks, had been taken by someone; that, when appellee was searched, 70 marks were found upon his person, 60 of which the complaining witness claimed to be his; that he, appellee, was not permitted to testify, but was found guilty of theft or suspected theft and sentenced to serve three months in a prison camp. This, the immigration authorities held, amounted to conviction of a crime involving moral turpitude, barring his right to enter and invalidating his immigration visa. However, in view of our disposition of this appeal, we think it unnecessary to decide whether this determination was in accord with the law.

The decisive factor we think lies in the answer to the question whether the entry of February 24, 1940, or that from Germany in March 1939, constituted entry within the meaning of the Act, for, if so, appellee's admission that he committed in June 1938, the crime of passing counterfeit money for which he was, on April 29, 1939, convicted in the United States District Court in New York, justified his deportation, provided that crime involves moral turpitude.

Appellee testified that he entered New York from Germany in March 1939, and again from Havana on February 24, 1940. The District Court found that he had made no re-entry and that his voyage, terminating in the arrival of his ship in New York which had sailed from San Francisco, though various foreign ports had been visited, did not involve an entry from abroad. This, we think, was erroneous.

The opinion of the Supreme Court of the United States in United States ex rel. v. Corsi, Commissioner of Immigration, 287 U.S. 129, 53 S.Ct. 40, 41, 77 L.Ed. 215, seems decisive. There the alien entered this country in 1923, remaining until March, 1929, when he shipped on an American vessel for a voyage to Germany and return. This vessel remained in port in Germany two and one half days, but there was no evidence that petitioner went ashore. He returned to the United States on the same ship in April, 1929. The court said: "The question is whether by so doing he made a new entry into the United States which left him amenable to the provisions of the act * * *. The relator's arrival in the United States in April, 1929, was an entry into this country notwithstanding he was a member of the crew of an American ship which had made a round trip voyage. He came from a place outside the United States, and from a foreign port or place, within the meaning of the immigration laws." Here as there the alien was a member of the crew of an American ship; here as there in 1939 he came from Germany, and, later, in 1940, from Havana, Cuba. See also United States ex rel. Claussen v. Day, Commissioner of Immigration, 279 U.S. 398, 49 S.Ct. 354, 73 L.Ed. 758; United States ex rel. Volpe v. Smith, 289 U.S. 422, 53 S.Ct. 665, 77 L. Ed. 1298; In United States ex rel. Roovers v. Kessler, District Director of Immigration, 5 Cir., 90 F.2d 327, 328, the alien entered the United States in 1917. In 1935 he shipped on an American steamship on a voyage which touched at Havana, Cuba, Cristobal, Canal Zone, and Puerto Cortez, Honduras. He testified that he did not go ashore at any port. On July 29, 1935, he returned on the ship to New Orleans. The court said: "Appellant did leave the United States on board a ship; he did on board that ship enter foreign ports and foreign territory; and he did, on board the same ship, re-enter the United States. That he did not betake himself ashore is immaterial." In U. S. ex rel. Volpe v. Smith, 289 U.S. 422, 53 S.Ct. 665, 667, 77 L.Ed. 1298, the alien, having lived in the United States for some years, made a trip to Cuba. His re-entry at Key West was held an entry within the meaning of

the statute. The court said: "That the second coming of an alien from a foreign country into the United States is an entry within the usual acceptation of that word is clear." In the face of these decisions, there is no escape from the conclusion that the alien did make a re-entry both when he returned from Germany in 1939 and when he returned from his voyage on an American vessel which visited foreign ports in 1940.

Since this case was argued the Supreme Court has announced its opinion in Delgadillo v. William A. Carmichael, etc., 68 S.Ct. 10. There the alien sailed on an intercoastal voyage from Los Angeles to New York. After passing through the Panama Canal his ship was torpedoed on its way to New York. He was picked up, taken to Havana, Cuba, and there cared for. He re-entered the United States on July 19, 1942 at Miami, Florida. The court distinguished its earlier decisions from the situation then confronting it on the ground that in each of the cases where re-entry had been held to have occurred, the alien had voluntarily visited a foreign port, while in the Delgadillo case, as the court said, the petitioner was "catapulted into the ocean," rescued and taken to Cuba. His voyage there was not of his own volition but forced upon him by circumstances. A return after such an unforeseen happening, the court announced in no uncertain terms, could not be considered an entry within the meaning of the statute except by way of "capricious application." The court observed in a footnote that if petitioner's intercoastal voyage had continued without interruption, he would not have made an entry when he landed at its termination. United States ex rel. Claussen v. Day, 279 U.S. 398, 49 S.Ct. 354, 355, 73 L.Ed. 758. This was based upon the statement in the Claussen opinion that "there is no such entry where one goes to sea on board an American vessel from a port of the United States and returns to the same or another port of this country without having been in any foreign port or place." The distinction between the case at bar and the Claussen case is that appellee in the present case did not return to this country at the end of an uninterrupted voyage without having been in any foreign port. He had visited various foreign ports and had apparently voluntarily landed and spent some time ashore at at least one of them, Havana. Nor it the case governed by the Delgadillo case, for there the petitioner's visit to a foreign port was wholly involuntary and brought about by circumstances wholly beyond his control, whereas in the present case, whether we consider that appellee entered when he came from Hamburg in 1939 or when he came from Havana in 1940, petitioner returned from voyages which carried him, of his own volition, to foreign ports.

That appellee's deportation is justified because of either of the re-entries, that in March, 1939 from Germany or that in 1940 from Havana, we think is clear from the statute. Section 155(a) requires deportation of an alien who has been convicted "or who admits the commission prior to entry of a felony or other crime or misdemeanor involving moral turpitude." Appellee has at all times admitted that on June 30, 1938, July 16, 1938 and July 17, 1938, he passed counterfeit United States currency and that from the 30th of June 1938, to the 17th of July, 1938 he conspired with others to commit an offense against the United States, namely, passing counterfeit United States currency. Though his conviction did not occur until after his return from Germany in 1939, the crime for which he was convicted and which he admits having committed was in fact committed some ten months prior to the date of that entry; indeed, he was on bond under the indictment when he made his last trip to Germany. The Attorney General was justified in ordering him deported whether his last entry was in 1939 or in 1940.

But, says appellee, the offense which he admits having committed occurred in this country. He insists that after he had originally come to America he could not legally be deported, under the statute which requires his deportation if he admits guilt of a crime involving moral turpitude, inasmuch as the crime was committed in this country within five years prior to his re-entry. That question was decisively answered contrary to appellee's contention by this court in United States ex rel. Volpe v. Smith, 7 Cir., 62 F.2d 808, affirmed in

United States ex rel. Volpe v. Smith, etc., 289 U.S. 422, 53 S.Ct. 665, 77 L.Ed. 1298. The Supreme Court commented: "The power of Congress to prescribe the terms and conditions upon which aliens may enter or remain in the United States is no longer open to serious question. Turner v. Williams, 194 U.S. 279, 24 S.Ct. 719, 48 L.Ed. 979; Low Wah Suey v. Backus, 225 U.S. 460, 468, 32 S.Ct. 734, 56 L.Ed. 1165; Bugajewitz v. Adams, 228 U.S. 585, 591," and held that "The second coming of an alien from a foreign country into the United States is an entry within the usual acceptation of that word." The court then disposed of the contention that the crime, in order to be made the basis for deportation, must have been committed before the alien came to America by saying: "Aliens who have committed crimes while permitted to remain here may be decidedly more objectionable than persons who have transgressed laws of another country."

█ It is clear, therefore, that appellee's admission of guilt of a crime committed in this country in 1938 was a bar to his stay in this country, provided the offense involved conviction of a crime "involving moral turpitude." The Volpe case, both in the Supreme Court and in this court, is conclusive also on this proposition. This court considered the specific question, holding as a matter of law that the crime of counterfeiting United States currency involves moral turpitude; and the Supreme Court agreed in these words: "In 1925 he pleaded guilty and was imprisoned under a charge of counterfeiting obligations of the United States—plainly a crime involving moral turpitude."

We conclude, therefore, that appellee was rightfully found subject to deportation because, within five years prior to his last entry, whether it be from Hamburg in 1939 or from Havana in 1940, he had admitted commission of a crime in 1938 involving moral turpitude, counterfeiting United States currency. In this view of the case it is not necessary to consider the other grounds urged by appellant for reversal of the order.

The government does not base its case upon those sections of the act which authorize deportation of alien enemies. Had it done so, appellee would have no defense, for under United States ex rel. Hack v. Clark, 7 Cir., 159 F.2d 552, in view of the fact that it is undisputed that appellee is an alien enemy, the basis for his deportation is absolute. But we doubt that the record would justify us in basing our decision upon that ground.

The order is reversed and the cause remanded to the District Court with directions to discharge the writ and to remand appellee to the custody of the Attorney General.