### UNITED STATES ex rel. CIANNAMEA v. NEELLY.

#### No. 10711.

United States Court of Appeals Seventh Circuit.

Feb. 18, 1953.

Dante J. Taddeucci, Chicago, Ill., Henry S. Romano, Chicago, Ill., of counsel, for appellant.

Otto Kerner, Jr., U. S. Atty., and Anthony Scariano, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., and John M. McWhorter, Acting District Counsel Immigration and Naturalization Service, Chicago, Ill., for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

DUFFY, Circuit Judge.

Relator, detained under a warrant of deportation issued December 20, 1950, filed a petition in the district court for a writ of habeas corpus. After a hearing thereon on May 9, 1952, the court entered a judgment discharging the writ, dismissing the petition, and remanding relator to custody. Relator appeals.

There is no dispute that relator made an illegal entry into the United States on June 21, 1947. He was listed as a seaman on the "SS Quemar" which arrived at Norfolk, Virginia, on that date. An ordinary seaman would have been permitted shore leave, but the immigration inspector regarded relator as a mala fides seaman, that is, one whose purpose in coming to the United States was to remain in this country rather than the pursuit of his calling as a seaman. The inspector ordered that relator be detained on board ship, but in defiance of such order relator escaped from the ship and, without any right or authority, remained in this country, finally coming to Chicago where he obtained employment.

A warrant of arrest was issued May 5, 1950, charging that relator was in the United States in violation of the Immigration Act of May 26, 1924, in that at the time of his entry he was an immigrant not in possession of an immigration visa and was not exempt from the presentation thereof. A copy of the warrant was served on him. He was advised of his right to counsel and was released on bond. A hearing was held on December 12, 1950, before Hearing Officer Eck, who gave him an opportunity to show cause if any he had why he should not be deported. Throughout the hearing Miss Minnie Alfano acted as interpreter. Miss Alfano, employed since 1941 by the U. S. Immigration and Naturalization Service, Department of Justice, as interpreter and stenographer, has spoken the Italian language since childhood and in addition studied Italian for two years at Crane College.

In response to questions at the hearing, relator stated that he understood the nature of the charge contained in the warrant of arrest, and that he understood he had the privilege of being represented by counsel. He was asked, "Do you wish to be represented by counsel in this matter?" He answered, "No, sir." When asked for what purpose he entered this country, he replied, "My intention was to go ashore and remain here permanently." He also admitted he did not possess an immigration visa. He asked for the privilege of voluntary departture from this country, but also requested permission to remain here for a year so that he could earn some money. Later at the hearing he stated he would be ready to leave when the government so requested.

The hearing officer explained that section 20(a) of the Internal Security Act of 1950 provided that deportation shall be directed by the Attorney General to the country specified by the alien, if such country is willing to accept him into its territory. At first relator asked that he be sent to Italy, but later he expressed a preference to be deported to Canada. Inquiry was thereafter made of the Canadian Government whether relator would be permitted to enter that country, but permission therefor was refused.

At the conclusion of the hearing, the hearing officer, in the presence of relator, stated his decision, including findings of fact and conclusions of law. He found that relator was single; that his mother was dead and that his father resided in Italy; that the only close relative he had in the United States was a cousin; that he had no-one in the United States dependent upon him for support. He also found that the fact that relator as a boy had been a member of the Fascist Party did not establish ground for deportability under section 19(d) of the Immigration Act of 1917, as amended, 8 U.S.C.A. § 155(d). As to discretionary relief, the hearing officer found that relator had been a person of good moral character for the five preceding years. The hearing officer then determined, "It is ordered that the respondent (relator) be deported from the United States pursuant to law on the charge stated in the warrant of arrest." The hearing officer then asked relator, "Have you heard and understood my oral decision?" His answer was in the affirmative. The hearing officer then advised relator that if he wished, he might take exceptions to the findings of fact and conclusions of law and decision; that if he took exceptions, the entire record would be forwarded with his exceptions to the Commissioner of Immigration and Naturalization in Washington, D. C., in which case the decision of the hearing officer would become final only upon approval by the Commissioner. Relator was also advised by the hearing officer that if he waived his right to take exceptions the decision of the hearing officer would be final. He was then asked if he understood the information which the hearing officer had given and he answered in the affirmative. He was then asked whether he wished to take exceptions, and he answered in the negative. The last question asked of the relator at the hearing was, "Have you fully understood the interpreter?" And his answer was, "Yes."

The district court made detailed findings of fact including those hereinbefore set forth. The court referred to Miss Alfano as "a duly qualified interpreter in the Italian language." As conclusions of law the court held that the hearing on December 12, 1950,

"was fair, adequate and conformed to due process of law; that the warrant of deportation issued * * * on December 20, 1950, is based upon substantial material evidence and is valid in all respects." The court also concluded that there was no abuse of discretion by Hearing Officer Eck in the conduct of the deportation proceedings.

On this appeal relator makes two complaints: first, that the hearing of December 12, 1950, was unfair because of the alleged incompetence of the interpreter, and second, that the hearing officer abused his discretion in ordering relator deported.

There is no evidence to support the charge that Miss Alfano was incompetent as an interpreter of the Italian language, except relator's unsupported claim on the habeas corpus hearing that he did not understand everything, and that Miss Alfano did not speak "very good Italian." His counsel asked relator, "Did you understand what those questions were that were put to you?" He answered, "Not everything." He also claimed that he told Miss Alfano at the hearing before Hearing Officer Eck, "I don't understand everything you say." In the district court Miss Alfano denied that relator made any such statement to her, and further testified that he seemed to understand the questions asked. Miss Alfano testified that when the questions were of some length she took notes of same before repeating them to the witness. As an illustration of the apparent understanding of relator, the following question and answer is cited: "Question: I present for your examination, Form I–405, Certificate of Arrival of Alien Seaman or Airman, which shows that one Antonio Giannameo was admitted on June 21, 1947, at Norfolk, Virginia, on the 'SS Quemar,' and was ordered detained on board and later escaped. Does this record relate to you and to your last entry into the United States? I will ask the interpreter to read the certificate of arrival to you. Answer: Yes, that report relates to me, although the name is misspelled. It should be with "C" instead of "G" and the date of entry is no doubt correct. I must have been mistaken when I

said May 26 or 27, 1947, instead of June 21, 1947."

█ We conclude that there is no merit in relator's claim that the hearing before the deportation officer was unfair because of the alleged incompetence of the interpreter.

We consider next the claim of relator that the Attorney General, acting through the hearing officer, abused his discretion in not permitting relator to voluntarily depart this country in lieu of deportation.

Title 8 U.S.C.A. § 155(c) provided: "In the case of any alien * * * who is deportable under any law of the United States and who has proved good moral character for the preceding five years, the Attorney General *may* (1) permit such alien to depart the United States *to any country of his choice at his own expense, in lieu of deportation, or (2) suspend deportation of such alien if not racially inadmissible or ineligible to naturalization in the United States if he finds that such deportation would result in serious economic detriment to a citizen or legally resident alien who is the spouse, parent, or minor child of such deportable alien. * * *"* (Emphasis supplied.)

█ Thus, as a condition precedent to the Attorney General having the right to exercise his discretion either to permit a voluntary departure under section 155(c) (1) or to suspend the deportation under section 155(c) (2), relator had the burden of proving good moral character for the preceding five years. He met that burden, and the hearing officer made a finding of good moral character. As relator could not qualify for suspension of deportation, the only discretion left to the Attorney General was whether relator should be permitted to voluntarily depart this country. The alternative of course was deportation in the ordinary manner. 8 U.S.C.A. § 214.

We pointed out in United States ex rel. Schlimmgen v. Jordan, 7 Cir., 164 F.2d 633, 634, that in a habeas corpus proceeding, based upon detention under a warrant of deportation, the court acts upon the record made in the administrative proceeding and may not try the issues de novo. Our scope of review is narrow. In a case ruling on section 155(c) (2), the court said in United States ex rel. Weddeke v. Watkins, 2 Cir., 166 F.2d 369, 373, "Even if he [Attorney General] finds that the alien has been of good moral character, and that his deportation would cause economic hardship to his family, the statute does not say that the Attorney General *must* suspend deportation; it only says that he 'may.' Judicial review of administrative action in such a case, if available at all, is narrowly restricted in scope."

Considering the record made at the administrative hearing, we note that the hearing officer stated, "The respondent entered the United States as a seaman and is a recent arrival in the United States. He has no close family ties in the United States, and in the interest of a proper administration of the immigration laws it is believed that his application for discretionary relief should be denied." Certainly there is nothing in the record of the administrative hearing that shows any abuse of discretion.

But relator relies upon the following testimony given by the hearing officer upon cross examination at the habeas corpus hearing before the district court: "He was in the United States about three years at the time he had his deportation hearing before me, and he had no close family ties in the United States; he was single; his parents were not in this country—I believe he may have had a cousin here; and in the past few years there have been thousands of cases where vessels arrived in the United States and large portions of the crews deserted, and several years pass by before they are apprehended by the Immigration Service in many cases, and in the interest of a proper enforcement of the immigration law, it is the policy of the Immigration Service, to my understanding, to not grant discretionary relief to permit voluntary departure in such cases. This policy has been adopted in an effort to stamp out these desertions by seamen who come to the United States. There are thousands of seamen coming here in pursuit of their calling, and it is the usual policy to grant them shore

leave for the time the vessel is in port not to exceed 29 days; and from my own experience I have conducted deportation hearings on many Italian seamen who have registered from the province of Bari, Italy, where I believe Mr. Ciannamea comes from; and on the basis of those facts, I concluded that granting of voluntary departure, which is a discretionary privilege, should not be given to Mr. Ciannamea, and that was the explanation made for my decision."

We think this statement, elicited on the habeas corpus hearing, might well be disregarded in as much as our narrow scope of review limits us to an examination of the proceedings in the administrative hearing. However, considering the statement on the assumption that it throws light upon the reason for the hearing officer's decision, we do not believe it shows any abuse of discretion. It does show that this hearing officer had knowledge of previous serious abuses and violations of our immigration laws by the subterfuge of aliens shipping out of foreign countries as seamen and coming to our shores with the express purpose of jumping ship and remaining in this country.

The fact that others from Bari, Italy, in addition to relator, had tried the same scheme to avoid compliance with the quota and other provisions of the immigration laws undoubtedly brought to the mind of the hearing officer the serious problem that such practice posed in the enforcement of our immigration laws. Our national policy as to admitting aliens has been determined by Congress. It was surely no abuse of discretion to say, in effect, to an alien who had knowingly and wilfully violated our immigration laws, and who at that time had no close relatives in this country, "We will not grant you the privilege of departing voluntarily; we do not wish to encourage the violation of our immigration laws by permitting you to choose the manner of your departure." Indeed the hearing officer had the obligation to consider the best interests of the United States.

Administrative agencies are presumed to be "* * * equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect." Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456. Congress gave to the Attorney General and not to the courts the discretion of deciding whether relator should be deported or permitted to depart voluntarily. This court has no right to substitute its judgment on this issue for that of the hearing officer. United States ex rel. Tisi, etc. v. Tod, 264 U.S. 131, 133, 44 S.Ct. 260, 68 L.Ed. 590; Taranto v. Haff, 9 Cir., 88 F.2d 85, 86; Yep Suey Ning v. Berkshire, 9 Cir., 73 F.2d 745, 751. The only question before us is whether there was an abuse of discretion.

It seems without dispute that relator is a personable young man who shares with many others in foreign lands an ambition to live in the United States permanently. A month or so after the termination of the deportation hearing he presented himself to his draft board in Chicago and volunteered for duty in the belief that serving in the armed forces would help him obtain citizenship. He did serve about nine months as a cook in the Army at Fort Leonard Wood, Missouri, and was then honorably discharged and delivered to the Immigration and Naturalization Service, in accordance with military regulations. Later he married a lawful resident of the United States. But all this feverish activity on the part of relator has no bearing on whether he had a fair hearing before the hearing officer, or on whether at that time the hearing officer abused the discretion that reposed in him. The argument of relator boils down to charging that because he was not permitted to leave the United States on his own terms the Attorney General abused his discretion. We find no merit in this contention. Judgment affirmed.