**In the Matter of Adolfe CARTELLONE,
a.k.a. Joseph James Prince.
No. 33074.**

United States District Court
N. D. Ohio, E. D.
Feb. 7, 1957.

Henry C. Lavine, Cleveland, Ohio, for petitioner.

Sumner Canary, Dist. Atty., Eben H. Cockley and Russell E. Ake, Asst. U. S. Attys., John M. Lehmann, Dist. Director, Immigration & Naturalization Service, Cleveland, Ohio, for respondent.

WEICK, District Judge.

This is an action brought under the Administrative Procedure Act to review an order of deportation. Title 5 U.S.C. A. § 1001 et seq.

The deportation proceedings were instituted in 1941. Hearings were conducted in Cleveland in 1942 which resulted in an order of deportation being issued by the Attorney General on October 7, 1947 under the provisions of the Immigration Act of 1917. Title 8 U.S.C.A. § 155.[1]

A previous petition for a judicial review of the deportation order was denied by the District Court on the ground that the Administrative Procedure Act was inapplicable. Prince v. Commissioner of Immigration & Naturalization, D.C., 87 F.Supp. 53. The Court of Appeals reversed, holding that the order of deportation was subject to judicial review under the provisions of said Act. 6 Cir., 1950, 185 F.2d 578. In its opinion the Court of Appeals summarized the facts in the case as follows:

"Appellant, an alien, born in Italy, was, at the age of two, brought to the United States by his grandmother forty-eight years ago, and has continuously resided in this country since that time. He is mar-ried to a native American citizen and has a daughter sixteen years old. Twenty-nine years ago, he was convicted of a bank robbery and sentenced to a term of twenty years in prison, of which he served eight years, and was thereafter paroled, more than twenty years ago. He has been discharged from parole many years.

"In 1941, deportation proceedings were brought against him in Cleveland, Ohio, under Title 8 U.S.C.A. § 155, in which he was charged with having, in 1934, left the United States at Niagara Falls and entered Canada with his wife at a place called Crystal Beach, a nearby resort, where, it was charged, he had remained approximately an hour and a half, and then recrossed to the United States. It was claimed that appellant's re-entry into the United States was illegal because he had not been in possession of an immigration visa and, not being exempt from the quota, had committed an offense involving moral turpitude, namely, the robbery of 1921, prior to his entry—that is, his re-entry—from Canada. It appears that the government learned of such claimed re-entry from Canada through the admission of appellant himself, who stated, during the course of his examination in 1942, that, as mentioned above, he had visited Crystal Beach in Canada with his wife for an hour or so in 1934. In subsequent proceedings, however, appellant stated to the immigration officials that he had been mistaken about leaving Niagara Falls and entering Canada, and that, instead, he had passed over a bridge from Niagara Falls to Goat Island, a part of the United States, and had returned from that place after a visit of an hour or so in company with his wife; that he had told his wife of his tes-

---

1. Now 8 U.S.C.A. § 1251.

timony about going to Canada, whereupon she informed him that he had never been at Crystal Beach but had been at Goat Island instead. Appellant's wife later testified in the deportation proceedings to the same effect."

Following the decision of the Court of Appeals, a motion was filed in the Board of Immigration Appeals by the Assistant Commissioner, Adjudications Division, to withdraw the order of deportation and reopen the proceedings for further hearing.

In the motion, the Commissioner, among other things, stated that the petitioner may desire to offer additional evience concerning the issue as to his alleged re-entry into the United States from Canada in 1934, which was the sole issue in dispute. The motion to reopen was granted by the Board on May 22, 1951.

The reopened hearing was held in Cleveland on June 16, 1955 before Special Inquiry Officer George Fein. The petitioner appeared at the hearing and was represented by counsel.

At the beginning of the hearing the Special Hearing Officer addressed counsel for petitioner as follows:

"Special Inquiry Officer to counsel:

"You may proceed.

"By Counsel:

"At this time I do not choose to present any additional evidence or to add anything to the previous evidence that has been given on behalf of relator and witnesses and I choose to rest on that record and ask that this proceeding be dismissed at this time."

The examining officer offered in evidence a road map prepared by Rand-Mc-Nally Company showing Crystal Beach, Ontario and Goat Island, United States.

On January 23, 1956, the Special Inquiry Officer, after reviewing the entire record, adopted findings of fact and conclusions of law.

As to the controlling issue of fact in dispute, the Special Inquiry Officer found against the petitioner, namely, that he had entered the United States from Canada and he ordered the petitioner deported.

An appeal was then prosecuted by petitioner to the Board of Immigration Appeals, and after hearing the appeal was dismissed.

A subsequent motion to reopen, to permit petitioner to file his petition for suspension of deportation, was denied by the Board.

The present petition for review followed and was heard by the Court on the record. The case was argued orally and by briefs.

The sworn testimony of petitioner at the hearing on February 2, 1942, which was the basis for the finding that petitioner re-entered this country from Canada in 1934 was as follows:

By Presiding Inspector To Respondent:

"Q. When and where did you last enter the United States? A. New York about 1903.

"Q. By what means did you enter the United States? A. By boat.

"Q. What was the name of the boat? A. Oh, I don't know that.

"Q. For what purpose did you enter the United States? A. To join my mother.

"Q. Have you ever been away from the United States since you came here about 1903? A. Not that I know of.

"Q. Have you ever been deported from the United States? A. No, sir.

"Q. Have you ever been to Canada, Cuba, Mexico, New Foundland or any other place outside the United States? A. I went to Canada, Crystal Beach.

"Q. When was that? A. 1934 or 1935, I think—1934, I believe."

By Mr. Wolpaw:

"Q. For what purpose? A. Just to go to the beach.

"Q. How long were you gone? A. Just an afternoon."

By Presiding Inspector To Respondent:

"Q. Who accompanied you at that time? A. My wife.

"Q. What is her name? A. Margaret Prince.

"Q. How did you travel to Canada? A. By car.

"Q. Your own automobile? A. My own automobile.

"Q. Which way did you go to Canada? A. Buffalo, across the bridge.

"Q. How did you return? A. By the bridge—same bridge.

"Q. Where were you residing at the time? A. In Cleveland.

"Q. At the time of your admission—are you able to state more definitely when this was in 1934, or 1935? A. I think it was 1934.

"Q. What time of the year? A. It was summer time.

"Q. Could you say approximately what month? A. It was either July or August, it was hot.

"Q. Then you would say it was either in July or August, 1934, is that correct? A. Yes.

"Q. Were you inspected by a United States immigrant inspector at that time? A. I don't remember. All I showed was my ownership of the car.

"Q. Did you eat in Canada at that time? A. No.

"Q. You went to Canada for what purpose? A. For the bathing beach.

"Q. Did anyone question you as to where you were born, how long you had been in Canada? A. Well, I will tell you, I don't know. They did ask me where I was going.

"Q. Was that on the Canadian or American side? A. American side.

"Q. Have you ever been out of the United States any other time except this time mentioned? A. No, sir.

"Q. Were you in possession of a United States immigration visa at the time of your arrival in July or August, 1934, at Buffalo, New York from Canada? A. No."

At the hearing held March 12, 1947, petitioner testified that he now was in "great doubt" whether he left the United States in 1934. He related his conversation with his wife after the first hearing in which she told him that they did not go to Canada, but went over a bridge to an island which was in the United States.

Mrs. Prince corroborated her husband in her testimony that they did not drive to Crystal Beach, but to Goat Island in the United States.

Section 19(a) of the Immigration Act of 1917, 8 U.S.C.A. § 155(a), provided that "the decision of the Attorney General shall be final." A similar provision was contained in the Immigration Act of 1952, § 242(b), 8 U.S.C.A. § 1252(b).

■ These provisions have been construed to relate "to finality in administrative procedure rather than as cutting off the right of judicial review in whole or in part." Shaughnessy v. Pedreiro, 349 U.S. 48, 51, 75 S.Ct. 591, 594, 99 L. Ed. 868.

■ The Administrative Procedure Act authorizes a review by the Court and inquiry as to the fairness of the hearing and as to whether the order of the agency was supported by substantial evidence. 5 U.S.C.A. § 1009(e).

Was the order of deportation in the case at bar supported by substantial evidence?

■■ The testimony of petitioner at the hearing held on Feb. 2, 1942 was under oath. The hearing was in a quasi-judicial proceeding. His testimony constituted an admission against interest. United States ex rel. Schlimmgen v. Jor-

dan, 7 Cir., 164 F.2d 633. In the absence of mistake, such evidence would be conclusive. It would certainly be substantial evidence sufficient alone to base an order of deportation thereon. Bechard v. Ebey, 7 Cir., 300 F. 558.

The immigration authorities did not learn of any claimed mistake until more than five years later, to-wit: at the hearing of March 12, 1947.

Petitioner and his then attorney had signed a brief filed before the Attorney General in which they argued that petitioner's short sight-seeing trip to Crystal Beach, Canada and return ought not to be considered as a new entry or as breaking the continuity of his previous residence in the United States.

Petitioner had the opportunity of offering additional evidence, if he had any, at the reopened hearing in 1955, but he chose not to do so.

Petitioner argues that in the 1947 hearing he recanted his 1942 testimony; that he was mistaken when he had testified in 1942 as to his motor trip to Crystal Beach, Canada; that he drove to Goat Island in 1934 instead of Crystal Beach; that he was corroborated by the testimony of his wife; that there was no evidence of his re-entry in the United States in 1934 since he had corrected his testimony.

There can be no doubt that the sworn testimony of petitioner and his wife in 1947 materially conflicts with petitioner's testimony in 1942.

Petitioner wants this Court to determine the factual issue that his sworn testimony in 1942 was all a mistake and that the testimony of petitioner and his wife in 1947 was truthful.

Congress has not yet granted this type of authority to the courts.

The case has been before the Board of Immigration Appeals three times. The petitioner has been afforded every available legal opportunity to be heard. There has been a long delay in the proceedings.

In its opinion, rendered on August 14, 1956, the Board carefully reviewed the entire record. It said:

"We thoroughly covered this phase of the case in our opinion of December 19, 1947 and stated: 'We do not think that we would be justified at this time (1947) in rejecting his (respondent's) prior unequivocating testimony (1942) in order to accept his present version of the events.' There is ample judicial authority to the effect that the testimony of an alien in deportation proceedings is sufficient to establish deportability notwithstanding the fact that it is subsequently contradicted in later hearings. U[nited] S[tates] ex rel. Tsevdos v. Reimer, [2 Cir.] 108 F.2d 860, cert[iorari] den[ied] 310 U.S. 645 [60 S.Ct. 1095, 84 L.Ed. 1412]; cf. U[nited] S[tates] ex rel. Schlimmgen v. Jordan [7 Cir.], 164 F.2d 633; U[nited] S[tates] ex rel. Chartrand v. Karnuth [D.C.], 31 F.Supp. 799; Schoeps v. Carmichael [9 Cir.], 177 F.2d 391, 397.

"After careful consideration of the entire record we are still of the opinion that respondent visited Crystal Beach, Ontario, Canada during the Summer of 1934. His description of the inspection procedure and his testimony to the effect that he was required to show ownership of his car (pp. 6, 7) accurately describes the usual procedure followed by Canadian and United States Immigration Inspectors on the Peace Bridge between Buffalo, New York and Fort Erie, Ontario, Canada. There is no such inspection on the small bridge which connects 'Goat Island', a portion of the Niagara Reservation at Niagara Falls, New York with 'Prospect Park' on the mainland. We affirm the finding of the special inquiry officer with respect to respondent's deportability on the criminal charges based upon his admission and/or conviction of

the crime of robbery, first degree at Niagara County, New York on February 13, 1922."

There has been no showing here that the Special Hearing Officer acted capriciously, arbitrarily or abused his discretion or that petitioner was denied a fair hearing.

The District Court, in a proceeding to review under the Administrative Procedure Act, is not permitted to hear the case de novo. The case must be heard on the record. 5 U.S.C.A. § 1009(e).

The Court may not substitute its judgment for that of the Special Hearing Officer on the facts of the case. United States ex rel. Ciannamea v. Neeley, 7 Cir., 1953, 202 F.2d 289. Nor has the Court any right to pass upon the credibility of witnesses, or inquire into the weight of the evidence. These matters are solely for the Special Hearing Officer to determine. Cahan v. Carr, 9 Cir., 47 F.2d 604; Suwa v. Carr, 9 Cir., 88 F. 2d 119.

Where an alien recants his earlier testimony, the Special Hearing Officer is not bound to accept his later story. United States ex rel. Tsevdos v. Reimer, 2 Cir., 1940, 108 F.2d 860.

In United States ex rel. Lindenau v. Watkins, D.C.S.D.N.Y.1947, 73 F.Supp. 216, 223, Judge Holtzoff, sitting by designation, said:

"A person who on different occasions makes contradictory representations as to a vital matter and later asserts that one of them is accurate and that the others were erroneous, may hardly complain if he encounters incredulity and hesitancy to accept his selection of the statement claimed to be true. He who says that he dissembled on prior occasions, but subsequently professes to tell the truth, may be suspected of duplicity in connection with the later statement. The administrative tribunal, which has the advantage of seeing and hearing the witness, has the right to determine which of his several conflicting allegations should be credited. Credibility of witnesses is ordinarily to be determined by the triers of the facts—in this instance the administrative agency. Apparently, his earlier statements, rather than his later position, were deemed by the immigration authorities to be true."

The order of deportation was supported by substantial evidence, namely, the sworn testimony of petitioner.

If the result seems harsh, in view of petitioner's long stay here, he has no one to blame but himself, for his behavior has certainly not been what this country had the right to expect of an alien living here at its sufferance.

An order may be entered dissolving the injunction and dismissing the petition.

This memorandum is adopted as findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.