Francesco TODARO, Petitioner,

v.

Thomas M. PEDERSON, District Director, Immigration and Naturalization Service, Defendant.

No. 36317.

United States District Court
N. D. Ohio, E. D.
April 7, 1961.

Henry C. Lavine, Cleveland, Ohio, for plaintiff.

Merle C. McCurdy, U. S. Dist. Atty., George Morrison, Asst. U. S. Dist. Atty., Cleveland, Ohio, for defendant.

———◆———

McNAMEE, District Judge.

On October 20, 1959, after full hearing, the Special Inquiry Officer of the Department of Immigration held the petitioner, Francesco Todaro, an alien to be deportable under Title 8, § 1251(c). Pursuant to such determination an order of deportation issued. Thereafter, on May 6, 1960, the Board of Immigration Appeals affirmed the determination of the Special Inquiry Officer and dismissed petitioner's appeal. In this action for review petitioner alleged that the hearing before the Special Inquiry Officer was conducted unfairly and that the decision of the Special Inquiry Officer and the affirmance thereof by the Board of Immigration Appeals were contrary to law. He seeks reversal of the decision of the Immigration Department and an order restraining the execution of the order of deportation. Defendant has filed a motion for summary judgment, asserting that the record of the deportation hearing shows that defendant is entitled to a judgment of affirmance of the Immigration Department's decision as a matter of law. In opposing the motion petitioner contends that since the record below discloses genuine issues of material facts there can be no summary judgment granted under Rule 56, F.R.Civ.P., 28 U.S.C.A. Petitioner's argument is premised on the assumption that the scope of review in this action is as broad as the permissible range of inquiry in a civil action originating in a district court. This assumption is erroneous. "Summary judgment may be peculiarly appropriate in an action to enjoin or enforce an administrative order because of the type of review provided by statute." 6 Moore, Federal Practice, 2d Ed., § 56.17 (3), p. 2175. Petitioner is not entitled to a trial de novo but is limited to a review of the record before the Hearing Officer. The case is therefore ripe for summary judgment. Midwest Farmers, Inc. v. United States, D.C., 64 F. Supp. 91, 96; National Broadcasting Co. v. United States, D.C., 47 F.Supp. 940, aff'd. 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344; Fields v. Hannegan, 82 U.S.App. D.C. 234, 162 F.2d 17; Irvin v. Hobby, D.C., 131 F.Supp. 851. The motion for summary judgment as applied here is tantamount to a motion to affirm the judgment of the administrative body as being legally correct and presents only questions of law. The deportation proceeding was instituted under favor of Title 8, § 1251(c), which provides:

"§ 1251. Deportable aliens—General classes

\* \* \* \* \* \*

(c) An alien shall be deported as having procured a visa or other documentation by fraud within the meaning of paragraph (19) of section 1182(a) of this title, and to be in the United States in violation of this chapter within the meaning of subsection (a) (2) of this section, if (1) hereafter he or she obtains any entry into the United States with an immigrant visa or other documentation procured on the basis of a marriage entered into less than two years prior to such entry of the alien and which, within two years subsequent to any entry of the alien into the United States, shall be judicially annulled or terminated, unless such alien shall establish to the satisfaction of the Attorney General that such marriage was not contracted for the purpose of evading any provisions of the immigration laws; or (2) it appears to the satisfaction of the Attorney General that he or she has failed or refused to fulfill his or her marital agree-

ment which in the opinion of the Attorney General was hereafter made for the purpose of procuring his or her entry as an immigrant."

On January 5, 1956, petitioner, a native citizen of Italy, was married to Frances Garofalo, an American citizen, in a civil ceremony at Licata, Italy. On the basis of the marriage, petitioner, on May 16, 1957, obtained a nonquota immigration visa and entered the United States on June 29, 1957. The marriage was terminated on February 13, 1959 by a decree of divorce issued by the Common Pleas Court of Cuyahoga County, Ohio. Thus the alien's marriage was entered into less than 2 years prior to his entry into the United States and was terminated judicially within 2 years subsequent to such entry. The alien, therefore, bore the heavy burden of establishing to the satisfaction of the Attorney General that the marriage was not contracted for the purpose of evading any provision of the immigration laws.

## DISCUSSION

The jurisdiction of this Court is limited narrowly to ascertaining whether the proceeding before the Special Inquiry Officer was conducted fairly and whether his finding that the petitioner had not sustained the burden thrust upon him by the statute is supported by substantial evidence. This Court is without authority in this action to weigh the evidence, to determine the credibility of the witnesses or to substitute its judgment for that of the Special Inquiry Officer. Cartellone v. Lehmann, 255 F.2d 101 (6th Cir. 1958); In re Cartellone, 148 F.Supp. 676, 681 (N.D.Ohio 1957). Petitioner's claim that he was not afforded a fair hearing is without substance. The Hearing Officer evidenced a scrupulous regard for the requirements of a fair hearing. He continued the hearing from time to time to enable petitioner to produce witnesses in his behalf. He afforded petitioner an opportunity to testify at each of the several partial hearings that were held. Petitioner was represented by experienced and able counsel and was in all respects accorded a hearing that met the highest standards of fairness. It would serve no useful purpose to review at length the conflicting evidence in the record. As correctly observed by the Special Inquiry Officer "The major issue is credibility." That issue relates almost entirely to the central dispute as to whether petitioner or his former wife and mother-in-law was responsible for the dissolution of the marriage. In addition to that basic issue several relevant and undisputed facts emerge from the record. It was shown that petitioner was previously in the United States from 1952 to 1953. He entered this country on that first occasion as a stowaway and was deported. Prior to his returning to his native country he proposed marriage to one Annie Marie Orlando, a United States citizen, and gave her $500 to pay her passage to Italy. The $500 was returned to petitioner. Late in 1955, while petitioner's former wife, then Frances Garofalo, was in Italy with her mother, Angelina de Leonardi, she met the petitioner in the city of Licata. Petitioner learned that Frances was an American citizen and Frances and her mother learned of petitioner's previous deportation from the United States. The three of them made trips to American consulates in Rome, Naples and Palermo at the mother's expense for the purpose of ascertaining the procedure to be followed in order to effectuate petitioner's return to the United States. The parties were married in Licata on January 5, 1956 at a civil ceremony. There was an understanding between them that a religious marriage ceremony would be performed in the United States after petitioner was admitted to this country as a permanent resident. Petitioner's passage to the United States was paid for by his wife's mother who advanced him more than $100 in addition. At petitioner's request he was met in New York by his wife and her mother. On arrival at Cleveland petitioner lived with a friend of Mrs. de Leonardi. At no time was the marriage consummated by cohabitation nor did the parties at any time reside in the same dwelling.

Shortly after petitioner arrived in Cleveland arrangements were made to have a religious ceremony performed on October 19, 1957. In mid-September, 1957, there was a serious quarrel between the husband and wife and between petitioner and his mother-in-law. Shortly thereafter the wife cancelled the religious ceremony. In October 1957 she filed her action for divorce and the petitioner filed an answer and cross-petition. After hearing evidence in the divorce case the Common Pleas Court deferred final judgment for a period of 30 days to afford the parties an opportunity to reconcile their differences. No reconciliation was effected and a decree of divorce was granted February 13, 1959. Each party accuses the other of being the procuring cause of the dissolution of the marriage.

The record is replete with accusations and recriminations, highlighted by colored and exaggerated statements by both parties. The Special Inquiry Officer found that there was evidence favorable to petitioner and the officer had no illusions about the truthfulness of certain of the testimony of petitioner's then wife and mother-in-law. However, the Hearing Officer was not favorably impressed with most of the petitioner's testimony, particularly that considerable portion of it which related to the alleged voluntary admissions by Frances of "prior promiscuity." Petitioner contends vigorously that Mrs. de Leonardi deliberately and artfully contrived to destroy the marriage. The record does not sustain this contention. Mrs. de Leonardi gave her consent to the civil marriage in Italy. She paid the traveling expenses of petitioner to three American consulates, she paid petitioner's passage to this country and forwarded to him additional funds, she assisted materially in preparations for the religious ceremony. Until the quarrels of mid-September, Mrs. de Leonardi had given persuasive evidence over a substantial period of time of her desire to assist her daughter and her son-in-law in their plans for a religious ceremony. Until September 1957 petitioner's former wife also co-operated in every way to bring about the fruition of the plans made by the parties at the time of the civil marriage in Italy. In the light of their long and friendly attitude toward petitioner, it is reasonable to conclude that the change in attitude of Frances and her mother was induced by the offensive conduct of the petitioner after his arrival in Cleveland. Further comment is unnecessary. The Hearing Officer enjoyed the inestimable advantage of seeing and hearing the witnesses and was in the best position to determine the accuracy, reliability and truthfulness of their testimony. The undisputed facts make out a prima facie case against the petitioner and the determination of the Hearing Officer that petitioner failed to sustain the burden of proof cast upon him by the statute is supported by substantial evidence.

The decision of the Immigration Department is affirmed.